Alexander C. THOMPSON,
Appellant–Petitioner,

v.

Carmen M. THOMPSON, Appellee–
Respondent.

No. 45A03–0605–CV–200.

Court of Appeals of Indiana.

June 27, 2007.

that its liability to its employee was extinguished.

*Id.* at 517.

Eugene M. Feingold, Steven P. Kennedy, Law Offices of Eugene M. Feingold, Munster, IN, Attorneys for Appellant.

Bessie M. Taylor, Law Office of Bessie M. Taylor & Associates, Gary, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Alexander C. Thompson (Alex) appeals the trial court's order modifying his child support obligation to his ex-wife Carmen M. Thompson (Carmen). He raises the following re-stated issues:

I. Whether the Social Security retirement benefits paid to the parties' minor child should be credited against Alex's child support obligation.

II. Whether the trial court erred in imputing income to Alex.

III. Whether the trial court erred in ordering Alex to pay Carmen's attorney fees.

We affirm in part, reverse in part, and remand.

### FACTS AND PROCEDURAL HISTORY

Alex and Carmen divorced in 2002. They had one child during the marriage, A.K.T. In entering the Decree of Dissolution, the trial court approved the parties' marital settlement agreement and incorporated it into the dissolution decree. The agreement provided, in relevant part,

> [A.K.T.] is now receiving the sum of Alex's Social Security retirement benefits in the "amount of $565.00 per month, which sum shall shortly increase to $740.00 per month.... The benefits now

and hereafter to be received for [A.K.T.] shall discharge the obligation of support required by Alex."

*Appellant's App.* at 19.

In April 2004, Carmen filed a petition to modify Alex's child support obligation. After a hearing, the trial court found Alex's annual income included Social Security retirement benefits of $18,727.00; bank deposits of $4,565.65; interest of $5,242.65; and imputed income of $14,000.00 from a company in which Alex was the majority shareholder. The trial court ordered Alex to pay child support of $108.36 per week with no credit for the Social Security benefits that A.K.T. was receiving and ordered Alex to pay Carmen's attorney fees of $4,347.25.

Alex filed a motion to correct error. The trial court determined that the bank deposits and one-half of the imputed income should not be included in Alex's income and reduced the support obligation to $81.07. Alex now appeals.

## DISCUSSION AND DECISION

### Standard of Review

The trial court found that no child support order had been issued in the case and that Carmen's petition for modification should be treated as if it were determining support for the first time. On appeal, Alex does not challenge this ruling. Accordingly, the trial court was required to consider the following factors that a court must consider in an initial child support determination:

(1) the financial resources of the custodial parent;

(2) the standard of living the child would have enjoyed if the marriage had not been dissolved or the separation had not been ordered;

(3) the physical or mental condition of the child and the child's educational needs; and

(4) the financial resources and needs of the non-custodial parent.

*See* IC 31–16–6–1.

On review, we give substantial weight to the factual findings of the trial court because it is in the best position to judge the facts and the credibility of witnesses. *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind.2005). On factual issues, we defer to the trial court's discretion and reverse only if the decision is an abuse of discretion, clearly erroneous, or against the logic and effect of the circumstances before the court. *Id.* at 940–41, 941 n. 3. On questions of law, we review the trial court's ruling *de novo. Id.* at 941.

## I. Social Security Retirement Benefits

■ The first question before us is whether the trial court erred in determining that Alex was not entitled to a credit against his child support obligation for the Social Security retirement benefits that A.K.T. is receiving as a result of Alex's retirement. Our Supreme Court has clearly stated that a parent is entitled to a credit for Social Security disability benefits that a child receives, but that the question whether a parent is entitled to a credit for Social Security retirement benefits is left to the discretion of the trial court. *Brown v. Brown*, 849 N.E.2d 610, 614 (Ind.2006). We, therefore, review the trial court's denial of credit for Alex's Social Security retirement benefits received by A.K.T. for an abuse of that discretion.

In *Stultz v. Stultz*, 659 N.E.2d 125 (Ind. 1995), our Supreme Court on transfer was presented with the issue of whether there should be an automatic credit for Social Security retirement benefits received by the minor child or children of divorcing parents. Prior to transfer, this court, following *Poynter v. Poynter*, 590 N.E.2d 150

(Ind.Ct.App.1992), held that a credit against a parent's child support obligation for Social Security retirement benefits received by a child should always be entered. *Stultz v. Stultz*, 644 N.E.2d 589 (Ind.Ct. App.1994). In reversing that decision, our Supreme Court held that such a credit "is not automatic and the presence of Social Security benefits is merely one factor for a trial court to consider in determining the child support obligation." *Id.* at 128. The Court reviewed the trial court's determination that allowing a credit would be contrary to the statutory consideration of the lifestyle that the children would have enjoyed had the marriage not been dissolved. The trial court had reasoned that if the marriage had not been dissolved the children would have enjoyed the benefit of all the father's income, *plus* the Social Security benefits they received, *plus* the mother's income.

The problem with *Poynter* credit was not in the automatic allowance of a credit for Social Security retirement benefits received by the children of divorced parents but rather was in the failure of courts to treat those benefits as a part of the total family income on which child support should be calculated. As a result, child support was calculated only on the basis of the respective income of the parents without giving any regard to the children's Social Security benefits or to the way in which the receipt of the benefits contributed to the standard of living of the children. This child support would necessarily be lower than that needed to continue the standard of living that the children had previously enjoyed. Allowing an automatic credit compounded the problem by significantly reducing (or eliminating entirely) the support obligation of the retired parent.

The problem which arises post *Stultz* is just the opposite. In attempting to apply the *Stultz* methodology, courts calculate child support without giving any regard to the Social Security retirement benefits that the children are receiving. When those benefits are then added to the child support payments, the result is an anomaly in which the children of divorcing parents enjoy a standard of living much greater than that which they enjoyed pre-dissolution.

Consider the following scenario: Father is retired. He receives Social Security benefits and a pension totaling $600 per week. Mother earns $600 per week from her employment. The three children receive a total of $171 per week ($740 per month) in Social Security retirement benefits. Pre-dissolution, the children have a standard of living based on a total family income of $1,371 per week. The *Indiana Child Support Guidelines* (Support Guidelines) say that the total support obligation to maintain this standard of living post-dissolution is $366 per week. If the parents' marriage is dissolved, utilizing the *Poynter* methodology, Father's child support obligation ($163 per week) would be totally offset by the Social Security retirement benefits which the children were receiving. The children would have a standard of living based on a total of $334 per week (Mother's support obligation of $163, plus Social Security of $171 per week). The children would suffer a reduction in standard of living of $32 per week. If the marriage is dissolved and child support is calculated utilizing the *Stultz* methodology, Father and Mother would have a support obligation of $163 per week each ($326 total) and the children would receive the Social Security retirement benefits of $171 for a total standard of living of $497 per week or $131 per week *higher* than had the marriage remained intact.

This scenario leads to three observations:

First, it is seen that neither the *Poynter* methodology, nor that utilized by the trial court in *Stultz*, meet the statutory goal that the children should have the same standard of living post-dissolution that they have pre-dissolution.

Second, the problem that arises here with regard to Social Security benefit payments paid to children would be the same whenever the children of divorcing parents have a source of income or support apart from the parents, such as trust or earned income. It is also the same in families which receive Social Security disability benefits.

Third, our Support Guidelines do not provide the methodology for dealing with income paid directly to children of divorced parents and how that income should affect the parents' child support obligations.

Our Supreme Court may wish to revisit the issue now before us. Since its holding in *Stultz*, the great majority of courts nationally have held that some type of credit should be provided for Social Security retirement benefits paid to or on behalf of a child. *See Annotation*, 34 A.L.R. *5th* 447. In addition, the Court has decided *Brown* providing an automatic credit for Social Security disability benefits paid to a child and creating at least the potential that similarly-situated children and families will be treated differently.

In the Support Guidelines, our Supreme Court adopted a comprehensive methodology for determining child support. The cases that we are called upon to review strongly support the conclusion that the Support Guidelines have served our citizenry well and have achieved their objectives of establishing appropriate standards of support as a matter of state policy, making support awards more equitable and consistent, and improving the efficiency of the judicial process in determining child support issues. *See Commentary to Guideline 1, Indiana Child Support Guidelines.* In adopting the Support Guidelines, the Court selected the Income Shares Model because it was based on the premise that "children should receive the same proportion of parental income after a dissolution that they would have received if the family had remained intact." *Id.*

One of the matters which the Support Guidelines did not consider was the effect of income paid to or on behalf of a child by payors outside the family unit. Examples of such income are government benefit payments such as Social Security disability, survivor and retirement benefits, military allotments, Aid to Families with Dependent Children, and income to the child from private sources such as trusts and estates or tort judgments. As a result, the presence of such benefits, while not common, has posed particular challenges to our trial and appellate courts and has resulted in what appears to be the very inconsistency the Guidelines were designed to avoid.

In *Stultz*, our Supreme Court held that the receipt of Social Security retirement benefits by the children of divorcing parents should not be treated as an automatic credit against the child support obligation but "is merely one factor for the trial court to consider in determining the child support obligation" in the exercise of its discretion and mindful of the statutory directive that the driving consideration is the standard of living which the child would have enjoyed had the marriage not been dissolved. This holding is consistent with the adoption of the Income Shares Model in the Support Guidelines.

In *Brown*, our Supreme Court held that Social Security disability benefits paid to the children of divorcing parents should be treated as an automatic credit against

the support obligations of the disabled, non-custodial parent. As a result, children of divorced parents who are receiving disability benefits are treated very differently than children of divorced parents who are receiving retirement benefits even where all other factors, including the incomes of each of the parents, the Social Security benefits, and the family's financial condition, are identical. Moreover, the children of divorced parents who are receiving either Social Security retirement or disability benefits will receive a much higher percentage of family income after the dissolution than they would have received had the marriage remained intact.

The problem is that *Stultz* has been construed not as a matter for a trial court to decide in the exercise of its discretion, but, rather, to sanction mechanically plugging the appropriate amounts into the Child Support Worksheet and calculating the resulting support without regard to the Social Security benefits that the child is receiving. This application results from the fact that the Court in *Stultz* found that the methodology which the trial court there had used did not constitute an abuse of discretion, commenting that it would appear that most Social Security retirement situations be resolved in the same way. *See Stultz,* 659 N.E.2d at 128. Looking to the mandatory consideration of the standard of living that the child would have enjoyed had the marriage not been dissolved, the trial court resolved the issue by noting that "[i]f the marriage had not been dissolved the children would have enjoyed the benefit of all of the respondent's income plus the retirement, plus the Social Security retirement benefits they received, plus the petitioner's income." The trial court's notation is correct but incomplete.

Consider the following scenario: Father, Mother and one child in an intact mar-

riage; each of the parents earns $18,000 from employment, and they have $9,000 of outside income for a gross family income of $45,000. The child has the benefits of the total family income. If the parents divorce, each of the parents will have a basic support obligation of $68.00 per week for a combined total of $136 per week or $7,072 per year. That $7,072 will be used for the child's benefit and is set at such amount as will provide the child the same benefit post-dissolution as when the family was intact. The $7,072 is 15.7% of the total family income. .

Now, consider a scenario in which Father is retired and receives social security benefits of $18,000 per year; Mother, has earned income from her employment of $18,000; the only child of the parties receives social security benefits of $9,000 per year. As before, the child has the benefit of the combined $45,000 in total income and the $9,000 social security benefit which the child receives will be used to support the child. If the parents divorce, the total income of the family will be the same, but the child support will vary significantly. Using the methodology approved in *Stultz,* if the social security benefits are the result of Father's retirement, Father and Mother will each have a support obligation of $57.50 per week or $2,990 per year. The child will have the benefit of that support, totaling $5,980 plus the social security retirement benefits of $9,000 per year for a total annual benefit of $14,980 or 33.3% of the total family income. If the social security derives from disability benefits, Father's support obligation will be entirely offset by the Social Security family benefits; Mother will continue to have her obligation; and the child will have the benefits of $11,990 or 26.6% of the total family income. In either event, both the gross child support and percentage of total income used for the benefit of the child are

much higher where the family receives Social Security benefits.

In developing its methodology in *Stultz,* the trial court properly recognized that the child would have had the benefits of the social security retirement benefits had the parents' marriage not been dissolved. What it failed to realize is that the parents would also have been the beneficiaries of such payments since the benefits paid to the child would be part of the total income of the family, and some or all of the costs of raising the child had the family remained intact would have been paid by the Social Security benefits. Such benefits should continue to be applied after the dissolution. The statutory mandate is to provide the children of divorce a lifestyle equal to that they would have enjoyed had the family remained intact. As the above scenarios illustrate, *Stultz* may be applied to provide support benefits far beyond what the child would have had.

· *Stultz* should be applied to provide for the exercise of the trial court's discretion when faced with situations such as that now before us, and the child's receipt of social security benefits should be factored into the support calculation. We note, however, that simply providing a dollar for dollar credit for the social security retirement benefits to the non-custodial parent would in most cases be an abuse of that discretion. As noted by the Court in Stultz:

> This methodology does not consider the social security benefits payable to the children to be part of the parent's in question adjusted income.... [I]n those situations where the trial court concludes that it is appropriate to give a Social Security recipient parent credit for Social Security benefits paid directly to a child, the trial court should in fact include the amount of the benefits in the recipient parent's adjusted income for purposes of calculating the parents' relative share of the total child support obligation.

659 N.E.2d at 126, n. 2.

It is this methodology which we would encourage trial courts to consider when confronted with family situations in which the child or children have an outside source of income without regard to the source. We believe that the methodology is consistent with our Supreme Court's directives in *Stultz* and *Brown.* We also believe that utilizing such a methodology will promote the aims of the Support Guidelines, will treat similarly situated families the same, and will provide for children receiving the same degree of support post-dissolution that they had when their parents' marriage was intact.

Applying this methodology to the facts of the Thompson family, we see that had the family remained together the child would have had the benefit of a combined family income (including Carmen's income, Alex's imputed income, interest income and social security, and the child's social security retirement benefits) of $1,206 per week. At this level of family income, the basic support obligation is $175 per week. This sum amounts to 14.5% of the total family income. Utilizing the methodology from *Stultz,* the trial court ignored the child's social security benefits and calculated the basic support obligation at $156 per week (with Alex's share being $89.75 per week and Carmen's share being $66.25 per week). When the child's social security benefits are added to the basic support, the total support is $327 per week, 27.11% of the total family income, and $152 per week higher than the standard of living the child would have received had his parents' marriage remained intact.

■ Our Supreme Court has ruled that the question of the proper treatment of the

Social Security retirement benefits received by a child in calculating child support should be left to the sound discretion of the trial court. We hold that a trial court abuses that discretion in setting support at a level that varies to such an extent from the standard of living that the child would have enjoyed had the family remained intact and that devotes substantially higher percentages of total family income to such support for families receiving Social Security benefits than those that do not. Accordingly, we reverse the trial court's support calculation and remand for a recalculation of the support obligation consistent with this opinion.

## II. Imputed Income

■■■ Next, we address whether the trial court abused its discretion in imputing $7,000 in income and $5,242 in interest income to Alex. A trial court maintains wide discretion in imputing income in child custody matters to ensure the obligor does not evade his or her support obligation. *Miller v. Sugden*, 849 N.E.2d 758, 761 (Ind.Ct.App.2006). "However, child support orders cannot be used to 'force parents to work to their full economic potential or make their career decisions based strictly upon the size of potential paychecks.'" *Id.* (quoting *In re E.M.P.*, 722 N.E.2d 349, 351–52 (Ind.Ct.App.2000)). Ultimately, imputed income may only come from voluntary under employment or an intentional act divesting one of their income. *Id.*

The commentary to Support Guideline 3 provides some insight into the purpose of imputed income. Particularly, it is "to discourage a parent from taking a lower paying job to avoid payment of significant support" or to fairly allocate support "when one party remarries and, because of the income of the new spouse, they choose not to be employed." Ind. Child. Support Guideline 3, cmt. n. 2(c) (2004).

Here, the trial court originally imputed $14,000 of income to Alex. The court in its Finding no. 7 stated:

> As for the other income, the Court finds after a review of the evidence that [Alex's] company paid a partner $14,000 yet failed to state his name. More importantly the company failed to pay the major stockholder of the company, [Alex]. The Court therefore will impute the same amount of money paid to the partner as income for the Respondent— $14,000.

After Alex moved to correct error, the trial court revised the imputed income amount to $7,000. The trial court did not provide an explanation for why it reduced Alex's imputed income. Similarly, in calculating Alex's gross income, the court included tax-exempt interest income listed in Alex's individual tax returns worth an average of $5,242 over the 2002 and 2003 years. *Tr.* at 106. Alex testified that his business partner received $14,000 as the distribution of wages and compensation. *Tr.* at 104. However, when the trial court again asked Alex about the business income, Alex specifically admitted, "I know. I got that coming I hope one of these days." *Tr.* at 211–212.

■■■ We note that, for child support purposes, income is more inclusive than that reported for income tax purposes. *DeBoer v. DeBoer*, 669 N.E.2d 415, 424 (Ind.Ct. App.1996), *trans. denied.* A review of the record before us shows evidence that Alex had a single business partner for the company who drew money from the business that Alex did not draw. Whether Alex refused the money to avoid a steeper child support obligation is of no moment. The trial court was free to conclude, as a matter of fact, that those monies were available to Alex. It was within the trial court's

discretion to find half of the wages and compensation paid to Alex's business partner were available to Alex.

Next, Alex claims that the interest income was reinvested to secure loans for his business and cover other business expenses. This claim was undocumented and was rejected by the trial court. We cannot reweigh the evidence and reach another conclusion.

The trial court did not abuse its discretion in imputing income to Alex equal to half of the wages and compensation of Alex's business, nor did it abuse its discretion in including the tax-exempt interest income listed on his individual income tax returns.

### III. Attorney Fees

■ Finally, we must determine whether the trial court abused its discretion in ordering Alex to pay Carmen's attorney fees. Under IC 31–16–11–1, in actions for child support, a trial court has broad discretion to impose attorney fees on either party. *Claypool v. Claypool*, 712 N.E.2d 1104, 1110 (Ind.Ct.App.1999), *trans. denied* (2000). We may reverse the trial court's decision only if it is clearly against the logic and effect of the circumstances before the court. *Id.* (citing *Selke v. Selke*, 600 N.E.2d 100, 102 (Ind.1992)).

■ The trial court may consider the resources of the parties, the financial earning ability of the parties, and "any other factors that bear on the reasonableness of the award." *Id.* The trial court, may also consider any misconduct on the part of either of the parties that creates additional legal expenses not otherwise anticipated. *Id.*

Here, the trial court ordered Alex to pay Carmen's attorney fees of $4,347.25. The earning disparity of the parties is sufficient to furnish the trial court with the discretion to order attorney fees. In its

April 4, 2006 order on Alex's motion to correct error, the trial court found Alex's weekly gross income was $596.00 and Carmen's was $440.00. A comparison of the earnings disparity adjusted for the payment of attorney fees nearly equalizes the earnings of either party. Because this is not against the logic and effect of the circumstances, the trial court did not abuse its discretion in ordering Alex to pay Carmen's attorney fees.

Affirmed in part, reversed in part, and remanded.

SHARPNACK, J., and MATHIAS, J., concur.