**Jack MIKEL and Nathan Mikel, d/b/a Mikel Farms, Appellants–Defendants,**

v.

**Donald JOHNSTON, Trustee, and Terry M. Johnston, Co–Successor Trustee, Appellees–Plaintiffs.**

No. 43A03–0812–CV–598.

Court of Appeals of Indiana.

May 29, 2009.

Joseph W. Eddingfield, Wabash, IN, Attorney for Appellants.

## OPINION

MATHIAS, Judge.

Jack and Nathan Mikel, d/b/a Mikel Farms ("the Mikels"), appeal the order of the Kosciusko Circuit Court denying their objection to the sale of certain real estate located in Kosciusko County. The Mikels appeal and argue that the trial court erred in denying their objection because of a defect in the notice of sale. We affirm.

### Facts and Procedural History

This case revolves around a forty-five acre tract of land in Kosciusko County ("the Real Estate"). The Real Estate is owned by three entities: the Revocable Trust of Carl W. Johnston, the Revocable Trust of Donald Johnston, and the Revocable Trust of Henry M. Johnston. Carl Johnston ("Carl") is the trustee of the Carl Johnston Trust, Donald Johnston ("Donald") is the trustee of the Donald Johnston Trust, and Terry M. Johnston ("Terry") is the successor co-trustee of the Henry Johnston Trust. Each Trust owns, as tenants-in-common, an undivided one-third interest in the Real Estate.

For several years, the Mikels farmed the Real Estate pursuant to an oral lease agreement between them and Carl. In February 2006, Donald and Terry met with Carl to discuss the Real Estate. Donald and Terry were apparently unhappy with Carl's management of the Real Estate and his arrangement with the Mikels. Carl told Donald and Terry that it was too late into the farming season to

terminate the agreement with the Mikels that year. On May 17, 2006, Carl entered into a ten-year lease agreement with the Mikels to farm the Real Estate. Donald and Terry sent a letter to the Mikels on November 27, 2006 informing them that "effective immediately" their services were terminated and that Donald and Terry, not Carl, were managing the Real Estate.[1] Appellant's App. p. 56. Apparently relying upon their lease agreement with Carl, the Mikels began to farm the Real Estate again in 2007.

On January 17, 2007, Donald and Terry filed suit against Carl and the Mikels seeking, *inter alia*, to terminate the lease agreement entered into between Carl and the Mikels and requesting that the trial court partition the Real Estate. Carl filed an answer to this complaint on March 14, 2007, and on April 24, 2007, the Mikels filed an answer, including affirmative defenses, and a counter-claim against Donald and Terry. On July 11, 2007, Donald and Terry filed a motion for partial summary judgment on the partition issue, which the trial court initially denied on December 12, 2007. Donald and Terry then filed a motion to reconsider on February 15, 2008.

On February 27, 2008, Carl sold the undivided one-third interest in the Real Estate owned by the Carl Johnston Trust to the Mikels.

On March 5, 2008, the trial court granted partial summary judgment on the issue of partition. On April 9, 2008, the trial court granted Donald and Terry's motion to appoint commissioners to conduct the partitioning of the Real Estate. The appointed commissioners filed their report with the trial court on July 22, 2008.

On August 4, 2008, the trial court issued an "Order of Appraisal and Sale," which found that the Real Estate "cannot be divided without damages to the owners [of] said land." Appellant's App. p. 153. The order provided for the appointment of three commissioners to conduct the partition sale of the land on or before September 30, 2008. The order further stated, "the [Real Estate] should be sold for cash at public sale for no less than 2/3 of its appraised value following reasonable notice pursuant to IC 5–3–1–2(j)." Appellant's App. p. 154.

On September 25, 2008, the commissioners filed their report on the appraised value of the Real Estate, concluding that the total appraised value thereof was $254,786.00. On September 30, 2008, the commissioners filed a petition for authority to publish the notice of sale, in which they indicated that the sale could not be completed by September 30, 2008 due to the amount of time it had taken to obtain the appraisals of the Real Estate. The trial court granted this petition on October 14, 2008, and the sale of the Real Estate was scheduled for October 30, 2008. After conducting the sale on October 30, the commissioners submitted to the trial court a report of the sale and a petition for approval of the sale.[2]

On October 31, 2008, the trial court then entered an order setting the report of sale for a hearing, stating in relevant part:

COMES NOW the Commissioner ... and submits to the Court Report and Petition for Approval of Sale consented to by the Plaintiff and Defendant herein, but the Commissioner informs the Court that after the Plaintiffs and Defendant had signed the Report of Sale, the Com-

---

1. This letter also noted that the Mikels had begun to operate an irrigation system at the farm.

2. The Mikels's counsel claims on appeal that he could not find the report of sale in the trial court clerk's record.

missioner discovered a defect[,] in that the second notice of the auction was not published as required. This being a defect that can be waived by the parties, the Court having examined the Contract and the Report, anticipates that the Plaintiffs and Defendant will waive any objection thereto, the Court now sets this matter for a hearing for November 12, 2008 ... and if the parties do not respond or appear thereto, the Court will approve the Contract of sale based upon the parties waiving the defect.

Appellant's App. p. 174. As predicted by the trial court, Donald and Terry filed a consent to the sale on November 10, 2008. The Mikels, however, filed an objection on November 12, 2008, which states in part:

[The Mikels] were advised ... that publication of the notice of sale occurred only once, contrary to the Court's order dated August 4, 2008, and [in] contravention of the requirements set forth in Indiana Code 5–3–1–2(j). [The Mikels] respectfully assert that lack of proper notice of sale potentially deprived [them] of the opportunity to maximize the purchase price for [the Real Estate], and that sale of the property should occur, with proper notice being published pursuant to said statute and Court Order.

Appellant's App. p. 179.

The trial court responded to the Mikels's objection by the following entry into the chronological case summary:

Defendants' objection to be set for hearing simultaneously with their posting of cash bond in the amount of $325,000.00 conditioned upon the re-offering of the real estate for sale and to indemnify the Plaintiffs for loss that might be occasioned by virtue of the Court's granting of [the Mikels]'s objection. [The Mikels

are] given through and including Friday, November 14, 2008 within which to post cash bond in the amount of $325,000.00, otherwise, upon failing to do so, objection to sale of real estate will be denied, no hearing will be set thereupon, and the sale, subject to possible further instructions relating thereto concerning expenses of sale, will be approved and confirmed without further hearing.

Appellant's App. pp. 8–9. The Mikels did not post the cash bond, and on November 18, 2008, the trial court entered an order approving the sale of the real estate, which stated in relevant part:

The COURT having examined the Petition and Report, FINDS that the Notice of the public auction was given by publication in the *Warsaw Times Union*, a newspaper in general circulation in Kosciusko County, Indiana, and published in the English language on the 18th day of October 2008, that although the Published Notice complied with State Statutes regarding Notice, the published notice was not in full compliance with the Order of the Court. Opportunity to object and notice thereof was given to all interested parties. One objection was filed, however the Objecting party failed to post bond as required by the Court.

THE COURT FURTHER FINDS that any objections to failure to give notice have been waived.

THE COURT FURTHER FINDS that the parties have waived the last publication.

Appellant's App. pp. 183–84. The Mikels now appeal.

### Discussion and Decision

██ On appeal,[3] the Mikels argue that the trial court erred in denying their

---

3. The appellees have not filed briefs with this court. When an appellee fails to submit a

brief, an appellant may prevail by making a *prima facie* case of error. *Dominiack Mech.,*

objection to the sale because notice of the sale was published only once, instead of twice as was ordered by the trial court. The trial court concluded that the Mikels had waived this argument by failing to post the cash bond the trial court had required. On appeal, the Mikels completely ignore their failure to post the bond as required by the trial court. For this reason alone we would be justified in affirming the trial court's decision. Regardless, we will address the statutory argument presented by the Mikels.[4]

■ The partition of real estate is governed by Indiana Code chapter 32–17–4. Indiana Code section 32–17–4–12 ("Section 12") provides that "[i]f the commissioners report to the court that the whole or part of the land of which partition is demanded cannot be divided without damage to the owners, the court may order the whole or any part of the land to be sold at public or private sale on terms and conditions prescribed by the court." Ind.Code § 32–17–4–12(a) (2002). Further, "[i]f the court orders a sale under this section, the order shall provide for *reasonable public notice of the sale*." I.C. § 32–17–4–12(b) (emphasis added). Thus, Section 12 requires only "reasonable public notice" of the partition sale.

Here, the trial court's order regarding the sale of the Real Estate stated that the sale should take place "following reason-able notice," but the trial court's order stated that such reasonable notice should be "pursuant to IC 5–3–1–2(j)." Indiana Code section 5–3–1–2 (2008) ("Section 2") provides in relevant part:

(a) *This section applies only when notice of an event is required to be given by publication in accordance with IC 5–3–1.*

(b) If the event is a public hearing or meeting concerning any matter not specifically mentioned in subsection (c), (d), (e), (f), (g), or (h) notice shall be published one (1) time, at least ten (10) days before the date of the hearing or meeting.

(c) If the event is an election, notice shall be published one (1) time, at least ten (10) days before the date of the election.

(d) If the event is a sale of bonds, notes, or warrants, notice shall be published two (2) times, at least one (1) week apart, with:

(1) the first publication made at least fifteen (15) days before the date of the sale; and

(2) the second publication made at least three (3) days before the date of the sale.

(e) If the event is the receiving of bids, notice shall be published two (2)

---

*Inc. v. Dunbar*, 757 N.E.2d 186, 189 n. 1 (Ind.Ct.App.2001). The *prima facie* error rule protects this court and takes from us the burden of controverting arguments advanced for reversal, a duty which remains with the appellee. *Id.* Nevertheless, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id.*

4. The Mikels also claim that the failure to give two notices of the public sale constitutes a deprivation of due process. The objection the Mikels filed with the trial court, however, makes no argument regarding due process.

See Appellant's App. pp. 178–79. As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind.Ct. App.2002). Moreover, the case cited by the Mikels, *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), concerned the notice requirements of due process. Here, however, the Mikels do not claim to have been without notice of the sale.

times, at least one (1) week apart, with the second publication made at least seven (7) days before the date the bids will be received.

(f) If the event is the establishment of a cumulative or sinking fund, notice of the proposal and of the public hearing that is required to be held by the political subdivision shall be published two (2) times, at least one (1) week apart, with the second publication made at least three (3) days before the date of the hearing.

(g) If the event is the submission of a proposal adopted by a political subdivision for a cumulative or sinking fund for the approval of the department of local government finance, the notice of the submission shall be published one (1) time. The political subdivision shall publish the notice when directed to do so by the department of local government finance.

(h) If the event is the required publication of an ordinance, notice of the passage of the ordinance shall be published one (1) time within thirty (30) days after the passage of the ordinance.

(i) If the event is one about which notice is required to be published after the event, notice shall be published one (1) time within thirty (30) days after the date of the event.

(j) *If the event is anything else, notice shall be published two (2) times, at least one (1) week apart, with the second publication made at least three (3) days before the event. . . .*

(emphasis added).

Here, the notice of the public sale of the Real Estate was published only once, but the applicable statute, Section 12, does not specify whether notice of the sale must be published once or twice. It simply requires that "reasonable public notice" be given. Therefore, we cannot say that no-

tice of the partition sale of the Real Estate was in violation of Section 12.

The Mikels claim, however, that the notice was improper pursuant to Section 2(j), which does require publication of notice twice. As set forth in subsection (a), Section 2 applies only when notice of an event is required to be given pursuant to Indiana Code chapter 5–3–1. Our review of chapter 5–3–1 reveals no reference to partition sales. By its own terms, Section 2 concerns notices of public hearings, meetings, elections, sales of bonds, notes, or warrants, receiving bids, establishment of certain funds, and the publications of ordinances. We therefore conclude that Section 2(j) is not applicable to partition sales.

We acknowledge that the trial court's order stated that reasonable public notice should be given pursuant to Section 2(j). We read the trial court's order to mean that the reasonable public notice requirement of Section 12 could be met by publishing the notice of the sale twice, as set forth in Section 2(j). Certainly, publication of the notice of sale twice, as required by Section 2(j), would meet the Section 12(b) requirement of reasonable public notice. But this does not mean that the reasonable public notice requirement of Section 12(b) can *only* be met by publishing notice twice under Section 2(j). To meet the requirements of Section 12, the notice of the sale must simply be *reasonable* public notice. The Mikels do not explain why the public notice that was given in the present case was not reasonable.

■ Furthermore, even if we were to assume that the failure to give two public notices, per the trial court's original order, was improper, the Mikels have not established that they have been harmed by any error. *See Heagy v. Kean,* 864 N.E.2d

383, 388 (Ind.Ct.App.2007) (citing Indiana Appellate Rule 66(A) for the proposition that we will not reverse for errors that do not affect the substantial rights of the parties). The Mikels claim that "[i]t is reasonable to conclude that advertising a property for sale twice, as opposed to once, would improve the possibility of more potential bidders being informed of the offered sale. This could enhance the prospects of more competitive bidding, as well as the prospects of obtaining a higher sales price." Appellant's Br. p. 11. This is speculation. The Mikels point to no actual evidence that an additional published notice would have resulted in a higher sales price. Moreover, they do not claim that the price actually obtained was inadequate.[5] In short, the Mikels have not established *prima facie* error.

Affirmed.

RILEY, J., and KIRSCH, J., concur.

---

**5.** Indeed, if the trial court's bond requirement reflects the sales price of the Real Estate, then the sales price exceeded the appraised value by over $70,000.