# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN SANDERS**
Indiana University Maurer School of Law
Bloomington, Indiana

**EARL R.C. SINGLETON**
Community Legal Clinic
Bloomington, Indiana



FILED
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF | ) | |
| | ) | |
| MELANIE DAVIS | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| and | ) | No. 53A01-1305-DR-221 |
| | ) | |
| ANGELA SUMMERS, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Valeri Haughton, Judge
Cause No. 53C08-1210-DR-561

**December 20, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Melanie Davis f/k/a David Paul Summers ("Davis") appeals the order of the Monroe Circuit Court dismissing Davis's petition to dissolve her marriage with Angela Summers ("Summers"). On appeal, Davis claims that the trial court erred in concluding that Davis and Summers's marriage was void under Indiana Code section 31-11-1-1, which generally prohibits same-sex marriages in Indiana. Concluding that the parties' marriage was not automatically voided when the trial court granted Davis's petition to change her name and be identified as a female instead of a male, we reverse and remand.

### Facts and Procedural History

On October 30, 1999, Davis, then known as David Paul Summers, and Summers were married in Brown County, Indiana. The marriage produced one child, K.S., who was born in July 2005. At some point, Davis was diagnosed with "gender dysphoria." According to the fifth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"), a diagnosis of "gender dysphoria," formerly known as "gender identity disorder," is a disorder of "people whose gender at birth is contrary to the one they identify with." See American Psychiatric Association, "Fact Sheet on Gender Dysphoria," available at http://www.dsm5.org/Documents/Gender%20Dysphoria%20Fact%20Sheet.pdf.

Thereafter, on May 31, 2005, Davis filed a petition in Marion Circuit Court to change his name from David Paul Summers to Melanie Lauren Artemisia Davis. His petition also requested that the gender on his birth certificate be changed from male to female. The Marion Circuit Court granted the change of name on September 12, 2005. However, that court did not order Davis's gender to be changed on the birth certificate

2

until it issued an amended order in his case three years later, on October 21, 2008. In this amended order, the court directed that the gender designation on Davis's birth certificate "be amended from Male to Female in order to conform to her identity, legal name and appearance." Appellant's App. p. 9.[1]

After this legal change of gender, Davis and Summers remained married until they separated later in 2008. Approximately four years after the parties separated, on October 25, 2012, Davis filed a petition for dissolution of marriage in Monroe Circuit Court. Summers did not oppose the petition. On January 23, 2013, the trial court approved of the parties' agreed provisional order. Pursuant to the provisional order, Davis was granted custody of K.S. and Summers was ordered to pay child support.

However, on March 8, 2013, the trial court, acting *sua sponte*, issued the order at issue in this appeal, which provides in relevant part:

> The Court having reviewed the file herein and pertinent matters of law now FINDS:
>
> a. Indiana Code 31-11-1-1 states: Same sex marriages are prohibited.
>   i. Sec. 1(a) Only a female may marry a male. Only a male may marry a female.
>   ii. (b) A marriage between persons of the same gender is void in Indiana even if the marriage is lawful in the place where it was solemnized.
>
> 7. When the order amending the Petitioner's gender was issued on October 21, 2008, Petitioner's gender designation was legally changed to female. Pursuant to I.C. 31-11-1-1, Melanie Lauren Artem[i]sia Davis (formally David Paul Summers) a female was prohibited from being married to Angela Summers, also a female. The marriage became void on October 21, 2008.

---

[1] The question of whether the trial court properly amended Davis's birth certificate to show a change of gender is not before us.

3

8.  On October 25, 2012, Melanie Davis filed a Verified Petition for Dissolution of Marriage, believing the marriage of the parties to be valid. Said belief could have been construed to constitute a common-law marriage prior to January 1, 1958.  However, since January 1, 1958, common-law marriages in Indiana are prohibited by the repeal of the provision allowing common-law marriage in Acts 1957, Ch. 78 § 2, effective January 1, 1958, and the adoption of the statute prohibiting common-law marriages – I.C. 31-1-6-1.

9.  The parties cannot assert that theirs is a common-law marriage, which is prohibited by statute.  They were legally married prior to Petitioner's gender reassignment, but the marriage was voided when both parties became female, as such marriages are also prohibited by Indiana statute.

10. "A trial court cannot dissolve a marriage that is not a marriage because it is already void."  Williams vs Williams, 460 NE 2d 1226; 1984 Ind. App.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the parties' marriage was void as of October 21, 2008.  Because the Court lacks the jurisdiction to dissolve a marriage because no marriage exists, Petitioner's Verified Petition for Dissolution of Marriage is hereby DENIED.

Appellant's App. pp. 5-6.  Davis filed a motion to correct error on April 8, 2013, which the trial court denied on March 15, 2013.  Davis then filed a notice of appeal on April 15, 2013, and this appeal ensued.

**Standard of Review**

Davis claims[2] that the trial court erred in concluding that Indiana Code section 31-11-1-1 acted to void her marriage with Summers as of the date her birth certificate was amended to show her change of gender.  This claim requires us to construe section 31-11-1-1.  The interpretation of a statute is a pure question of law and is reviewed under a *de*

---

[2]  Summers has not filed an appellee's brief.  When an appellee fails to submit a brief, the appellant may prevail by making a *prima facie* case of error.  Mikel v. Johnston, 907 N.E.2d 547, 551 n.3 (Ind. Ct. App. 2009).  This *prima facie* error rule protects this court and takes from us the burden of controverting arguments advanced for reversal, a duty which remains with the appellee.  Id.  But even under the *prima facie* error rule, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required.  Id.

*novo* standard. <u>Demming v. Underwood</u>, 943 N.E.2d 878, 888 (Ind. Ct. App. 2011), <u>trans. denied</u>. Our supreme court has summarized the rules of statutory construction as follows:

> The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutes leave no room for judicial construction. However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature. To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. We also examine the statute as a whole. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

<u>City of N. Vernon v. Jennings Nw. Reg'l Utils.</u>, 829 N.E.2d 1, 4-5 (Ind. 2005) (citations omitted).

**Discussion and Decision**

Davis claims that the trial court erred in construing Indiana Code section 31-11-1-1, which provides:

> (a) Only a female may marry a male. Only a male may marry a female.
>
> (b) A marriage between persons of the same gender is void in Indiana even if the marriage is lawful in the place where it is solemnized.

Ind. Code § 31-11-1-1.

It is clear that subsections (a) and (b) of the statute have both disjunctive and conjunctive meaning in the case before us. When the parties were married, Davis was a male and Summers was a female, and their marriage produced a child, K.S. This

5

marriage complied with the requirement of subsection (a). The question then, is what effect subsection (b) of the statute had on the parties' marriage, years after it had been validly entered into under Indiana law. The trial court, focusing exclusively on the first part of subsection (b), concluded that the parties' 1999 marriage was void. This is not an unreasonable reading of the first part of subsection (b) if read alone, as it states, "A marriage between persons of the same gender is void . . . ." But, as set forth in City of North Vernon, *supra,* we must read subsection (b) not only in the context of the rest of the statute, but also in the context of the other statutes governing marriage in Indiana.

The whole of subsection (b) provides that "[a] marriage between persons of the same gender is void in Indiana *even if the marriage is lawful in the place where it was solemnized.*" I.C. § 31-11-1-1(b) (emphasis added). Davis argues that section 31-11-1-1(a) was meant to prevent the marriage of persons of the same sex from being considered as married in Indiana and that subsection (b) simply states that a marriage between those of the same sex is invalid in Indiana even if it was solemnized in a state where same-sex marriages are permitted but does not automatically void a marriage that was initially valid in Indiana simply because one of the parties to the marriage has changed his or her gender. We agree.

Indiana Code clearly addresses marriages that are void. Specifically, Chapter 8 of Indiana Code 31-11 is titled "Void Marriages." Section 1 of this chapter voids *ab initio,* and without legal proceedings, the types of marriage described in sections 2-5 that follow. Section 2 of the chapter declares that "[a] marriage is void if either party to the marriage had a wife or husband who was living when the marriage was solemnized." I.C.

6

§ 31-11-8-2. Section 3 declares a marriage void if it is between people more closely related than second cousins, with certain exceptions. I.C. § 31-11-8-3. Section 4 declares a marriage void if "either party to the marriage was mentally incompetent when the marriage was solemnized." I.C. § 31-11-8-4. And Section 5 states that a common-law marriage is void if it is entered into after January 1, 1958. I.C. § 31-11-8-5.

Lastly, Section 6, added in 1997, states:

A marriage is void if the parties to the marriage:
(1) are residents of Indiana;
(2) had their marriage solemnized in another state with the intent to:
    (A) evade IC 31-11-4-4 or IC 31-11-4-11 (or IC 31-7-3-3 or IC 31-7-3-10 before their repeal); and
    (B) subsequently return to Indiana and reside in Indiana; and
(3) without having established residence in another state in good faith, return to Indiana and reside in Indiana after the marriage is solemnized.

I.C. § 31-11-8-6.

Thus, Section 6 declares marriages void if they are simply an attempt to circumvent the restrictions of certain other statutory restrictions on marriage, namely Indiana Code sections 31-11-4-4 and 31-11-4-11 and their predecessor statutes. Section 31-11-4-4 sets forth the requirements of an application for marriage, and the section 31-11-4-11 prohibits a court clerk from issuing a marriage to a person who has been adjudged to be mentally incompetent or who is under the influence of alcohol or a narcotic drug.

Simply said, there is nothing in the Indiana Code chapter dealing with void marriages that declares that a marriage that was valid when it was entered into becomes void when one of the parties to that marriage has since changed his or her gender. And

the section that deals with marriages between Indiana residents solemnized in other states to avoid the application of certain Indiana marital regulations does not mention same-sex marriages. Nor does it need to do so, as these marriages are already void under Indiana Code section 31-11-1-1(b) even if they were solemnized in another state.

The trial court's reasoning in the present case has the effect of adding the type of marriage at issue, a marriage between a male and female solemnized pursuant to Indiana law, to that Section 1 marriages that are void *ab initio,* along with polygamous, polyandrous, cousins' and incompetents' marriages  To read this into the current statutory framework is beyond the purview of our constitutional authority to interpret statutes.

The trial court's reasoning would also result in an untenable situation regarding the parties' child, who is a legitimate child born to a legally-married man and woman during their marriage. To conclude that the parties' marriage somehow became void when the gender was changed on Davis's birth certificate would permit Davis to effectively abandon her own child,[3] even though the parties were validly married at the time of the child's birth and even though Davis is the child's father. It would also leave the parties' child without the protection afforded by Indiana's dissolution statutes with regard to parenting time and child support. We do not think that our General Assembly intended such a result.

In summary, under the specific facts and circumstances before us in this case, a marriage between a man and a woman that was valid when it was entered into does not

---

[3]  It is important to emphasize that there is nothing in the record to suggest that Davis actually wishes to abandon her child. To the contrary, Davis claims that the trial court's ruling could have the undesired effect of terminating her parental rights. And the ruling could indeed have that effect.

automatically become void when one of the parties has his or her birth certificate amended to indicate a change of gender. The statute prohibiting same-sex marriages does not apply to the particular set of circumstances in this case because the parties did not enter into a same-sex marriage in Indiana or into a same-sex marriage that was solemnized in another state. In addition, a marriage such as the one at issue here is not listed among those marriages declared void *ab initio* under applicable Indiana statutes, and it would be improper to interpret the statute otherwise. Accordingly, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BRADFORD, J., and PYLE, J., concur.