**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**J.M.**
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF B.M.: | ) | |
| | ) | |
| J.M., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 79A05-1403-JP-115 |
| | ) | |
| M.S., | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE TIPPECANOE CIRCUIT COURT
The Honorable Thomas H. Busch, Special Judge
Cause No. 79C01-0003-JP-1

**November 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Pro-se Appellant J.M. ("Father") appeals an order issued pursuant to a motion to correct error, modifying in part an order determining Father's child support obligation for B.M., his child with M.S. ("Mother"); finding Father to be in contempt of court for non-payment of child support and medical expenses; and ordering that he pay Mother's attorney's fees. We affirm in part, reverse in part, and remand with instructions.

**Issues**

Father articulates several issues,[1] which we consolidate and restate as the following: whether the trial court abused its discretion by:

    a.    Failing to correct mathematical error in the crediting of child support payments made by Father;

    b.    Finding Father in contempt of court; and

    c.    Ordering Father to pay Mother's attorney's fees.

**Facts and Procedural History**

Father and Mother are the parents of B.M., born July 31, 1996. On August 15, 2002, Mother was awarded sole custody of B.M. Father was ordered to pay child support of $123.16 weekly and a portion of B.M.'s uninsured medical expenses. **App. 89.**

On July 14, 2003, the Tippecanoe Circuit Court issued an order providing in relevant part: "Child support shall continue at $100.00 per week" and "The father is current on all child support payments." (App. 91.) On March 21, 2006, a Guardian ad Litem ("GAL") was appointed to make recommendations in light of "ongoing problems between the parents."

---

[1] Father fails to develop a corresponding argument as to some of his articulated issues.

(App. 34.) The parents were ordered to participate in family counseling and individual counseling. On January 13, 2011, the trial court issued an order modifying parenting time, ordering Father to have individual counseling sessions, and providing that "in the event there are further issues," the parents were required to meet with the GAL. (App. 38.)

On September 22, 2011, counsel for Mother issued a letter to Father's counsel stating that Father had failed to make his contributions to medical bills and also owed $450.00 in child support. On April 19, 2012, Father filed a petition to modify child support. The petition for modification was dismissed on July 17, 2012. On the same date, Mother filed a petition alleging Father was in contempt of court for non-payment of medical bills and child support arrearage. On July 30, 2012, upon advice of counsel, Father paid an additional $200.00 in cash as child support. He subsequently filed a Certification of Compliance in the trial court. Mother filed a petition to modify child support.

On August 21, 2013, a hearing was conducted on all pending motions. At the conclusion of Father's and Mother's testimony, the trial court ordered that Father provide health insurance for B.M. and ordered the parties to submit proposed findings and conclusions on the remaining issues.

On October 24, 2013, the trial court issued an order modifying Father's child support obligation to $166.00 weekly and finding Father in contempt of court. The order stated that Father was to purge himself of contempt by paying $1,642.83 to Mother for medical bills owed for 2010 and 2011, paying a child support arrearage of $1,782.00 (as of May 5, 2013), and paying Mother's attorney's fees of $1,500.00. **App. 26.** Father filed a motion to correct

3

error, claiming that his income available for child support had been over-stated and that $133.00 weekly was an appropriate amount. He further asserted that mathematical error had been reflected in the trial court's calculation of child support arrearage and he had been in arrears only $200.00, which he had paid after the filing of the contempt petition. Father also claimed that he owed only $1,234.89 as medical expenses and Mother had failed to show that she had paid the first 6% of B.M.'s medical expenses, in compliance with an agreement reached during co-parenting counseling sessions. According to Father, the finding of contempt was thus unwarranted. Finally, he challenged the award of attorney's fees and requested that Mother be ordered to pay his attorney's fees.

On February 4, 2014, a hearing was conducted on the motion to correct error. On February 18, 2014, the trial court issued a corrected order. Pursuant to the corrected order, Father was to purge himself of contempt by paying $1,500.00 to Mother's attorney, paying $1,782.00 in child support arrearage, and paying $1,288.99 in medical bills. Father now appeals.

**Discussion and Decision**

Standard of Review

At the outset, we note that Mother has failed to file an appellee's brief. When the appellee fails to submit a brief, we need not undertake the appellee's burden of responding to arguments that are advanced for reversal by the appellant. Hamiter v. Torrence, 717 N.E.2d 1249, 1252 (Ind. Ct. App. 1999). Rather, we may reverse the trial court if the appellant makes a prima facie case of error. Id. "Prima facie" is defined as "at first sight, on first

4

appearance, or on the face of it." Id. Still, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. Mikel v. Johnston, 907 N.E.2d 547, 550 n.3 (Ind. Ct. App. 2009).

A trial court is vested with broad discretion to determine whether it will grant or deny a motion to correct error. Williamson v. Williamson, 825 N.E.2d 33, 44 (Ind. Ct. App. 2005). Furthermore, we generally give considerable deference to the trial court's findings in family law matters as the trial court is in the best position to become acquainted with the relationship between parents and their children. Redd v. Redd, 901 N.E.2d 545, 549 (Ind. Ct. App. 2009). An abuse of discretion occurs if the trial court's decision was against the logic and effect of the facts and circumstances before the court or if the court has misapplied the law. Walker v. Kelley, 819 N.E.2d 832, 836 (Ind. Ct. App. 2004).

Where, as here, the trial court enters findings of fact and conclusions thereon without an Indiana Trial Rule 52 written request from a party, the entry of findings and conclusions is considered to be sua sponte. Dana Companies, LLC v. Chaffee Rentals, 1 N.E.3d 738, 747 (Ind. Ct. App. 2013), trans. denied. Where the trial court enters specific findings sua sponte, the findings control our review and the judgment only as to the issues those specific findings cover. Id. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial. Id.

A two-tier standard of review is applied to the sua sponte findings and conclusions made: whether the evidence supports the findings, and whether the findings support the judgment. Id. Findings and conclusions will be set aside only if they are clearly erroneous,

that is, when the record contains no facts or inferences supporting them. Id. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. Id. In conducting our review, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. Id. We will neither reweigh the evidence nor assess witness credibility. Id.

## Child Support

The trial court's "Corrected Order for October 24, 2013," entered on February 18, 2014, included findings of fact with regard to child support arrearage:

16. The child support printouts from the Tippecanoe County Clerk's Office that were put into evidence show that between July 15, 2003 and July 17, 2012 (the date the mother filed her contempt petition), there were 470 weeks x $100.00 per week, which equals $47,000.00 owed by the father for child support.

17. The last Court Order regarding the child support was July 14, 2003, and at that time the [sic] there was no arrearage owed by the father.

18. Between July 15, 2003 and July 17, 2012, the father paid support in the amount of $46,250.00.

19. The father's support arrearage on July 17, 2012 was $750.00.

20. On July 30, 2012, after the mother filed her contempt petition, the father paid an additional $200.00 and reduced his support arrearage to $550.00.

21. In the 42 weeks from July 18, 2012 to May 3, 2013, the father has paid his support of $100.00 per week on a timely basis by paying $4,200.00 in 42 weeks.

22. The father is in arrears in the amount of $550.00 as of this date not including any retroactive support dating back to the date the mother filed her modification on October 31, 2012.

6

(App. 30-31.) Father's Exhibit B, a Tippecanoe County Clerk summary of child support payments, accompanied by a summation sheet, discloses payments by Father from August 16, 2002 to July 30, 2012. Father paid $51,200.00 after the July 14, 2003 order stating there was no child support arrearage. For the time frame corresponding to Finding No. 18, that is – July 15, 2003 to July 17, 2012 – Father paid $46,750.00. Thus, Findings 18, 19, 20, and 22 are erroneous.

Father owed $47,000.00 for the 470 weeks at issue; he paid $46,750.00 and thus was behind $250.00 by July 17, 2012, the date of Mother's petition for contempt. Thereafter, upon advice of his former counsel that he was $200.00 in arrears, Father made a $200.00 payment.[2] This payment was recognized by the trial court. However, the trial court's calculation of an arrearage incorporates mathematical error, apparently based upon Mother's testimony after her attorney's review of the payment history.[3] This should be re-calculated upon remand.

In addition, Father makes a cursory argument that his ongoing child support obligation should be lower because irregular income was improperly included in the calculation of his gross income available for child support purposes.[4] He does not develop a supporting

---

[2] Apparently, Father's former counsel believed that he should receive credit for a $50.00 payment made on July 14, 2003. This was, however, likely taken into account by the trial court in the same-day order clarifying that Father was not in arrears.

[3] Father's typical payment was $100.00. However, on September 17, 2007, he made a $600.00 payment. It appears that the $500.00 discrepancy between the calculation of Mother's counsel and Father's counsel may be attributable to $100.00 being added into a total as opposed to $600.00.

[4] The Indiana Child Support Guidelines advocate a total income approach to calculating weekly gross income. Ratliff v. Ratliff, 804 N.E.2d 237, 245 (Ind. Ct. App. 2004). The guidelines define "weekly gross income" as actual weekly gross income of the parent if employed to full capacity, potential income if unemployed or

7

argument, beyond claiming that he has not been re-elected to his part-time local trustee position. This factual assertion was not entered into evidence at the hearings before the trial court. Father does not demonstrate an abuse of discretion in the trial court's determination of prospective child support.

Finally, with respect to child support, Father notes that Mother was given credit for the payment of health care premiums. At the conclusion of the hearing on August 21, 2013, the trial court ordered Father to provide health insurance for B.M. within seven days and ordered that child support worksheets were to show no prospective deduction for Mother. However, this change in worksheets was not implemented and warrants correction upon remand.

Contempt

Whether a person is in contempt of a court order is a matter left to the trial court's discretion, and we will reverse a finding of contempt only where an abuse of discretion has been shown. Geesy v. Geesy, 959 N.E.2d 256, 258 (Ind. Ct. App. 2011). Contempt is not an available remedy in every case where a child support deficiency exists; rather, for an obligor to be held in contempt, it must be shown that the delinquency resulted from a willful failure to comply with a support order and that the delinquent parent had the ability to pay. Id. (citing Pettit v. Pettit, 626 N.E.2d 444, 446 (Ind. 1993)).

Here, the evidence indicates that Father regularly paid child support via income withholding. At one point, he was in arrears in child support by $250.00 (possibly only

---

underemployed, and imputed income based upon "in-kind" benefits. Ind. Child Supp. G.3(A).

$200.00 because of a July 14, 2003 payment of $50.00). Upon the filing of a petition for contempt and the advice of counsel, Father paid $200.00 in cash. Finding 24, providing "The father testified that he unilaterally stopped paying support at a point when his son was not visiting with him," is not supported by the testimony of record. (App. 31.)

Father also owed medical bills of $1,288.99. It is noteworthy, however, that the correct obligation was not ascertained until the final order on motion to correct error. The previous order erroneously incorporated a 66%/34% split as opposed to 51%/49%. Too, the parties had not complied with a prior court order to meet with the GAL regarding problems and were in disagreement as to Mother's obligation to pay 6% before billing Father and the degree to which documentation was necessary.

The trial court's findings of fact include findings that: "The father has not paid his portion of the medical bills owed for 2010" and "The father has not paid his portion of the medical bills for 2011." (App. 31.) However, the trial court does not include a finding that the non-compliance was in willful disobedience to a court order. Given the pervasive mathematical errors, and the lack of evidence of willfulness, the determination of contempt is contrary to the facts and circumstances before the trial court.

## Attorney's Fees

Father argues that the trial court abused its discretion when it ordered him to pay Mother's attorney's fees. He observes that Mother's attorney submitted no affidavit of fees and he further contends there is an absence of evidence of contemptuous behavior on his part.

9

A trial court has broad discretion to impose attorney's fees on either parent. Thompson v. Thompson, 868 N.E.2d 862, 870 (Ind. Ct. App. 2007). We will reverse an order for the payment of attorney's fees only when the award is clearly against the logic and effect of the facts and circumstances before the court. Id. The trial court may properly consider the respective resources of the parties, their financial earning abilities, and "any other factors that bear on the reasonableness of the award." Id. Moreover, the trial court may consider parental misconduct that necessitated additional legal expenses for the other parent. Id.

The instant award of attorney's fees did not rest upon the respective financial conditions of the parties. Rather, the trial court concluded that Father should pay Mother's attorney's fees because of his contempt of court. However, as the contempt finding is unsupported by the evidence, the award of attorney's fees is likewise unsupported by the facts and circumstances before the trial court.

Father claims that he should receive attorney's fees from Mother because she pursued an action for contempt of court without justification. According to Father, a more diligent review of child support records would have revealed that Father was not in arrears. That said, Mother's pursuit of Father for his contribution to medical bills was not misconduct warranting an award of attorney's fees to Father.

**Conclusion**

Father has established, prima facie, that the calculation of child support arrearage includes a mathematical error and that the child support worksheet supporting the prospective

10

child support award does not accurately reflect which parent pays medical insurance. Father has further shown, prima facie, that the trial court abused its discretion by finding him in contempt of court and ordering his payment of Mother's attorney's fees. We affirm in part, reverse in part, and remand with instructions to review the mathematical computation of past child support payments, correctly allocate the parental credit for health insurance payment, and calculate Father's child support obligation accordingly.

NAJAM, J., and PYLE, J., concur.