**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 04 2012, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE A. KOTZAN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL G. RUPPERT**
**JAIMIE L. CAIRNES**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD ERIC JOHNSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  49A05-1202-DR-81 |
| | ) | |
| GILLIAN WHEELER JOHNSON, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick L. McCarty, Judge
Cause No. 49D03-9906-DR-898

**December 4, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Richard Johnson ("Father") and Gillian Johnson ("Mother"), parents to two children, were divorced in 1999. In 2011, Father filed a petition for modification of child support, parenting time, and college expenses, and Mother filed a motion to determine Father's uninsured healthcare expense obligation dating back several years and the parties' extracurricular expense obligation. Following a hearing, the trial court reduced Father's child support obligation, determined the amount of uninsured healthcare expenses Father owed and set the future annual uninsured healthcare expense obligations of the parties, and modified parenting time, but declined to modify an earlier agreement between the parties regarding college expenses.

Father now appeals, raising several issues for our review, which we consolidate and restate as: 1) whether the trial court properly determined Father's obligation for past uninsured medical expenses; 2) whether the trial court abused its discretion in determining Mother's credit for payment of health insurance premiums for the children; 3) whether the trial court abused its discretion in its orders regarding parenting time and other visitation related issues; 4) whether the trial court abused its discretion in failing to modify the parties' agreement regarding payment of college expenses; and 5) whether the trial court abused its discretion in calculating child support because of its treatment of Social Security retirement benefits the children receive.

We conclude the trial court properly calculated Father's prior uninsured health care expense obligation based on the parties' original agreement; appropriately considered and

2

decided parenting time; and did not abuse its discretion in denying Father's request to modify the parties' agreement regarding payment of college expenses for the children, and we affirm the trial court's order in those respects. We also conclude, however, that the trial court abused its discretion in calculating Mother's health insurance premium credit; in ordering Father to pay all transportation costs for parenting time; and in failing to incorporate in its order the parties' agreement regarding payment of extracurricular expenses. Finally, we conclude that although the trial court did not abuse its discretion in finding Father is entitled to a credit for Social Security benefits the children receive, it did not correctly apply any such credit to the child support calculation. We therefore reverse the trial court's order with respect to these issues and remand for the trial court to recalculate child support and amend its order consistent with this opinion.

## Facts and Procedural History

Father and Mother, parents to two daughters ages sixteen and thirteen at the time of the trial court's order, were divorced in 1999 pursuant to a Decree of Dissolution which incorporated the parties' settlement agreement. The parties shared joint legal custody of the children, with Mother having physical custody and Father having "reasonable visitation as may be agreed upon between the parties." Appellant's Appendix at 34. Father was to pay $90.00 per child per week in child support and to maintain health insurance for each child. "All uninsured health care expenses incurred by the minor children . . . not covered by insurance each calendar year shall be paid as follows: [Father] agrees to pay fifty percent

(50%) of those expenses and [Mother] shall pay the remaining fifty percent (50%)." Id. at

35. In the event the children attend college:

> the parties shall pay the cost of that education, including room, board, tuition, living and clothing allowance, and a reasonable amount for book laboratory fees, and similar items as follows: [Father] 50% and [Mother] 50%. The parents shall be liable for only such sums after each child's scholarships, grants, loans or other financial aid amounts.
> The cost of the college education shall be calculated based upon the actual cost incurred, or the cost that would be incurred if the child attended a state supported college in Indiana as a resident student, whichever is less. This obligation shall not extend for enrollment during more than four academic years.

Id. at 36.

Following the dissolution, Father retired from his employment with the Marion County Sheriff's Department, remarried, and relocated several times, residing in Arlington, Virginia, at the time of the hearing. Mother had another child. In 2003, the parties modified their settlement agreement in several respects. Father's visitation was changed to "extending parenting time . . . for up to three weeks during the summer, or otherwise mutually agreed by the parties. Father will also have extended parenting time at least one other period during the year and at other designated times during the year as agreed by the parties." Id. at 49. Father was to pay the parenting time transportation costs for the children to and from Indianapolis. Father's support obligation was modified to $75.00 per child per week and was to abate by fifty percent when he had the children for a period of seven consecutive days. Mother was to maintain health insurance for the children. "Unless modified by this Agreement, the terms and conditions of the prior orders of this court remain in full force and effect." Id. at 50.

4

On February 17, 2011, Father filed a Verified Petition for Modification of Prior Orders on Support, Visitation, and College Expenses. He alleged therein that due to his retirement, each child was receiving monthly Social Security benefits but he was receiving no credit toward his support obligation for these benefits. Also, Father alleged that due to his status as a disabled veteran, the children would be entitled to abatement of certain higher educational expenses at state-supported institutions and he wished the college expense provision of the settlement agreement to be modified accordingly. Father also alleged that since January 2007, he had exercised at least seven weeks of parenting time with the children each summer plus one week of parenting time over winter break, paying all travel expenses for each visit, but the parties "now disagree on the length of [Father's] summer parenting time." Id. at 54. Mother responded by filing a Motion to Determine Father's Medical Expense and Extra Curricular Expense Obligation, in which she alleged that pursuant to the original settlement agreement, the parties were to split the children's uninsured medical expenses equally but that Father had not paid his share of those expenses. She also requested that each party pay their pro rata share of the children's extracurricular expenses.

The trial court held a hearing on the pending motions over two days, one in June and one in September 2011. At the request of the parties, the trial court entered findings of fact and conclusions thereon, which provide in pertinent part:

APPLICABLE LAW, FINDINGS AND CONCLUSIONS
* * *
21. Even though the Court has found that Father should not have a dollar-for-dollar credit against his child support obligation, the Court does hereby FIND that Father should receive some credit in the determination of his child support due to the [Social Security Retirement Children's ("SSRC")

5

benefits]. . . . The Court FINDS that the SSRC benefits should be included in Mother's [Weekly Adjusted Income ("WAI")].

22. . . . While the parties disagree as to when during the year Father should exercise his parenting time, the evidence is clear that the parties have historically agreed to overnight parenting time of up to 8 weeks. . . .

23. . . . Mother testified that she has three options for health insurance coverage through her employer: individual, individual plus one, or family. Mother introduced evidence that the monthly cost for an individual is $.08, the monthly cost for an individual plus one is $379.02, and the monthly cost for a family is $494.54. While Mother does have a subsequently born child, Mother testified, and her exhibit demonstrated, that she would incur the cost for a family – *i.e.*, $494.54/month – whether or not she had a subsequently born child. Therefore, Mother testified that the Weekly Health Insurance Premium credit should be calculated by prorating the amount that Mother pays for three children, *i.e.*, the difference between the cost of covering the family and the cost of covering just her and multiplied by 2/3 to account for two of the three children being of this marriage (. . . $76.67 per week). Father argues that the children's portion of Mother's health insurance premiums should be calculated by determining the difference between family coverage and individual plus one coverage [or] $26.75 per week. Father's request is inequitable because Mother cannot insure the parties' children for that amount. . . . Thus, the Court FINDS that Mother should receive a credit on Line 4B of [the Child Support Worksheet] in the amount of $76.67.

24. The Court having made the foregoing findings concerning child support, now FINDS: Father should pay support to Mother in the amount of $138.00 per week . . . . The Court FURTHER FINDS that, pursuant to Indiana's "6% Rule," Mother shall pay the first $1,344.72 per year in uninsured healthcare expenses . . . . If Mother incurs more than $1,344.72 in annual uninsured healthcare expenses, Father shall contribute 33% and Mother shall contribute 67% toward payment of the annual uninsured healthcare expenses in excess of $1,344.72.

* * *

26. Father contends that the Settlement Agreement's requirement to split the uninsured medical expenses 50/50 was modified to the "6% rule" because the [Child Support Worksheet] attached to the Amended Agreement included a software generated "Uninsured Healthcare Expense Calculation" at the bottom of the worksheet. . . . The payment of medical expenses was not addressed at all in the Amended Agreement and there was no language in the Amended Agreement **incorporating** the [Child Support Worksheet] support amount <u>and</u> uninsured healthcare expense calculation into the Amended Agreement – only that Father was to pay $150.00 per week, ". . . as provided in the attached Child Support Obligation Worksheet." The Court FINDS: that

the terms of the Settlement Agreement regarding a 50/50 split of medical expenses remained in full force and effect until January 23, 2011, when amended by this order.

27. The Court FINDS Father owes Mother fifty percent (50%) of all uninsured medical expenses incurred for the minor children prior to January 23, 2011 . . . .

* * *

29. Father did request that his percentage contribution to college expenses be reduced to the *pro rata* share on the post-secondary educational worksheet. . . .

30. . . . Father was a sheriff's deputy at the time of the parties' agreement, and he was earning $741.00 per week. He knew he would be retired when the children went to college. Now, Father is retired earning $805.00 per week and enjoying an annual household income, after child support, of more than $140,000.00 per year. The Court FINDS Father's request for a modification of the post-secondary education expense provision of the Settlement Agreement should be DENIED.

31. . . . The Court FINDS Father shall have parenting time during one-half (1/2) of each break the children have from school pursuant to Section II.B.3 of the [Indiana Parenting Time Guidelines].

* * *

## ORDER MODIFYING COURT'S PRIOR CHILD-RELATED ORDERS

The Court hereby adopts the foregoing Findings of Fact and Conclusions of Law and now being duly advised hereby ORDERS, ADJUDGES AND DECREES AS FOLLOWS:

1. Father's prior child support obligation in the amount of $150.00 per week should be, and hereby is, modified to the sum of $138.00 per week . . . .

2. Mother shall continue to provide healthcare insurance for the parties' children until further agreement of the parties, order of the Court or their emancipation, whichever comes first; and, any and all annual uninsured healthcare expenses up to and including the annual amount of $1,345.00 shall be paid by Mother pursuant to Indiana's "6% rule." Annual uninsured healthcare expenses of the parties' children exceeding $1,345.00 annually shall be paid by the parties: 33% by Father, 67% by Mother. Father owes Mother the sum of $4,334.18 for his share of the children's uninsured healthcare expenses up to January 23, 2011. Father shall be entitled to a credit for the overpayment of child support in the amount of $420.00 which shall be applied to his foregoing obligation to Mother. . . .

3. Father's request, that the Court modify the prior agreement of the parties requiring that they share post-secondary educational expenses of their children 50/50, is hereby denied.

7

4. The parties shall evenly divide the children's four (4) school breaks (Winter, Spring, Summer and Fall), pursuant to Indiana Parenting Time Guideline 2.B.3, commencing with the winter break for the 2011-12 academic year. The Court's prior order granting Father a 50% abatement for extended parenting time is hereby vacated and superseded by the parenting time credit set out for Father in the attached [Child Support Worksheet] . . . .
* * *
7. All of the Court's prior child-related orders not necessarily modified herein shall remain in full force and effect.

Id. at 11-25 (emphasis in original). Father now appeals.

## Discussion and Decision

### I. Standard of Review

The trial court entered findings of fact and conclusions thereon pursuant to Indiana

Trial Rule 52(A) at Mother's request. Our standard of review is well-settled:

> We must first determine whether the evidence supports the findings and second, whether the findings support the judgment. We will disturb the judgment only where there is no evidence supporting the findings or the findings do not support the judgment. We do not reweigh the evidence and consider only the evidence favorable to the trial court's judgment. Appellants must establish that the trial court's findings are clearly erroneous, which occurs only when a review of the record leaves us firmly convinced a mistake has been made. However, although we defer substantially to findings of fact, we do not defer to conclusions of law. Additionally, a judgment is clearly erroneous if it relies on an incorrect legal standard. . . . The purpose of Rule 52(A) findings and conclusions is to provide the parties and reviewing courts with the theory upon which the case was decided.

Maxwell v. Maxwell, 850 N.E.2d 969, 972 (Ind. Ct. App. 2006) (quotations and citations

omitted), trans. denied.[1]

---

[1] Father notes in his brief that the trial court adopted Mother's proposed findings of fact in their entirety. Father does not specifically name the propriety of the trial court's doing so as an issue on appeal or make any specific argument about said practice; however, Mother has responded in her brief as if he did. We simply note that the practice is not per se improper; the trial court is responsible for the correctness of the findings it adopts and the important inquiry is whether the findings are clearly erroneous. See Parks v. Del.

## II. Health Insurance

### A. Uninsured Health Care Expenses

Father first contends the trial court erred in its order regarding Father's obligation toward past uninsured health care expenses by not applying the 6% rule from 2003 on but rather applying the 50/50 provision from the parties' original settlement agreement.

A child support amount calculated using the Indiana Child Support Guidelines includes six percent for health care expenses. "The noncustodial parent is, in effect, prepaying health care expenses every time a support payment is made." Commentary, Ind. Child Support Guideline 7. Therefore, pursuant to the Guidelines, the custodial parent is to pay the first six percent of uninsured health care expenses each year and each parent pays the remainder of the expenses in proportion to his or her share of the parties' total income. When Mother and Father were divorced in 1999, however, they agreed that they would split the uninsured health care expenses for the children equally. The "Uninsured Health Care Expense Calculation" at the bottom of the Child Support Worksheet accompanying the decree of dissolution and settlement agreement was left blank. See Appellant's App. at 44. In 2003, the parties entered an amended agreement that addressed several specific items; uninsured health care expenses were not one of them. However, the Child Support Worksheet attached to the amended agreement did include an uninsured health care expense

---

Cnty. Dep't of Child Servs., 862 N.E.2d 1275, 1278 (Ind. Ct. App. 2007) ("The Indiana Supreme Court has acknowledged that a trial court's verbatim adoption of a party's proposed findings may have important practical advantages and has expressly declined to prohibit the practice.") (citing Prowell v. State, 741 N.E.2d 704, 708-09 (Ind. 2001)).

9

calculation that showed Mother's annual 6% obligation was $1,045.20 and the parties' respective obligations as to the remainder. See id. at 51.

In this post-dissolution proceeding, Mother sought a determination of Father's uninsured health care expense obligation since the 1999 divorce, alleging pursuant to the settlement agreement he owed half of the uninsured health care expenses since that time. Father countered that the 2003 amended agreement modified the uninsured health care expenses agreement from the 50/50 provision of the settlement agreement to the standard 6% Guideline calculation pursuant to the paragraph stating that "Father's child support obligation shall be modified to seventy-five dollars ($75.00) per week per child, as provided in the attached Child Support Obligation Worksheet." Id. at 49 (emphasis added). Father alleged he believed at that time that the 6% rule applied. The trial court found, based on contract law, that the express term regarding uninsured health care expenses in the settlement agreement was not modified by the amended agreement because it was not addressed therein and only the child support amount itself was incorporated from the attached Child Support Worksheet. Father contends this finding is in error.

When dissolving a marriage, the parties are free to craft an agreement providing for the maintenance of either party, the disposition of property, and the custody and support of the parties' children. Ind. Code § 31–15–2–17(a). Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction. Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008). However, although Indiana Code section 31-15-2-17(c) expressly prohibits the modification

10

of agreements as regards property disposition by the trial court, it does not similarly prohibit the modification of agreements regarding support and custody matters. Thus, the trial court could modify the terms of the parties' agreement as to support and its various elements under appropriate circumstances.

When Father filed his 2003 petition for modification of prior support orders, he noted that he was at that time paying $90.00 per week per child in child support and carrying medical and dental insurance on the children. He further noted that he would be retiring and no longer eligible for group insurance coverage. He requested that his support obligation and the requirement that he carry insurance on the children be modified due to his retirement. The agreed judgment between the parties lowered Father's weekly support and ordered Mother to carry health insurance on the children. In addition, it addressed extended parenting time for Father, and refinancing of the joint mortgage by Mother. The agreed judgment also provided that the terms and conditions of prior orders remained in effect unless modified by new agreement.

We agree with the trial court that the uninsured health care expense provision was an express provision of the settlement agreement in derogation of the Guidelines and that the agreed judgment, while accompanied by a child support worksheet that calculated the 6% uninsured health care expense obligation of the custodial parent and the percentage of the balance that each parent should pay, did not modify that provision. The uninsured health care expenses were not raised by Father's motion, nor were they specifically addressed by the amended agreement. There is no evidence, other than Father's self-serving testimony at the

11

hearing on this current motion, that the parties discussed uninsured health care expenses at all, let alone agreed to alter their previous agreement. And while it is impossible to know for sure, it is likely, given the "Indiana Child Support Obligation Calculator" header and indygov.org website footer on the Child Support Worksheet attached to the amended agreement, that the worksheet was completed by inputting the values into an online form that automatically did the calculations, including the uninsured health care expense calculation, and that the inclusion of such calculation without more means nothing in regard to an agreement between the parties to change the previous provision.[2]

## B. Health Insurance Premium Credit

Father also contends the trial court erred in giving Mother a $76.67 credit for the health insurance premiums she pays to carry health insurance on the children. Originally, Father carried health insurance on the children, but when he retired, Mother was ordered to add the children to her health insurance. At that time, Mother's insurance covered herself and her subsequently-born son on her employer's plus one plan, at a cost of $379.02. When Mother added the children, she and her three children were insured on the family plan for $494.54. The cost to insure Mother alone would have been $0.08. The trial court found that the cost to insure all three of Mother's children was $494.46 (the cost of the family plan minus the cost to insure Mother alone), and that Mother should have a credit equal to two-

---

[2] Father contends that if the agreement was not expressly modified by the inclusion of the Child Support Worksheet, it was modified by conduct. We note first that the settlement agreement provides it can be modified only in writing. Appellant's App. at 40. Moreover, it appears that Mother did not request any uninsured health care expense reimbursement from Father from the time of the amended agreement until this proceeding, as her request includes documentation of expenses dating back to 2003. As the only modification this conduct would effect is to relieve Father of his obligation to contribute to uninsured healthcare expenses altogether and it sheds no light on the understanding of the parties as to whether the 50/50 agreement

thirds that amount, or $76.67 per week. Father contends the trial court abused its discretion in so finding because that is the "theoretical" cost of insuring the children, rather than the "actual" cost, which he calculates as the difference between the amount she was paying without the children on her plan ($379.02) and the amount that she pays after adding the children ($494.54). Father therefore argues Mother's credit should be $26.75 per week.

Several Indiana Child Support Guidelines address how to handle the cost of health insurance in a child support calculation. Guideline 7 notes that the trial court shall order one or both parents to provide private health insurance when accessible to the child at a reasonable cost. Guideline 3 provides that the weekly cost of health insurance should be added to the basic child support obligation "whenever either parent actually incurs the premium expense . . . ." Ind. Child Support Guideline 3(E)(2). The commentary to Guideline 3(E) provides that "[o]nly that portion of the cost actually paid by a parent is added to the basic obligation." Guideline 3 also provides that the parent who pays for the insurance "should receive a credit towards his or her child support obligation in most circumstances." Child Support G. 3(G)(3). Generally, then, a parent should receive a health insurance credit in an amount equal to the cost the parent actually pays for a child's health insurance. Julie C. v. Andrew C., 924 N.E.2d 1249, 1260 (Ind. Ct. App. 2010).

The trial court reasoned that because the plan choices were to insure Mother alone, Mother plus one dependent, or the entire family, Mother could not insure the parties' two children for less than the family plan amount, irrespective of her subsequently-born child; Father's request was therefore "inequitable because Mother cannot insure the parties'

---

continued post-amendment, we reject Father's contention.

children for [$26.75 per week]." Appellant's App. at 16. On the other hand, the trial court found Mother's request equitable "because she only gets a credit for two-thirds of the cost, and, thus, if she sought child support for her subsequently born child and received a one-third credit for his portion of the premium she would ultimately receive credit for the actual amount of health insurance premium costs she pays." Id. The trial court's consideration of what could happen if Mother began receiving child support for her subsequently-born child is premature. At the time Mother added the children to her insurance, she was already paying $379 per month for insurance. Adding the children increased the premiums to $494 per month, thus raising her actual cost by only $115. That Mother receives no child support from her subsequently-born child's father unfairly burdens her with the costs of raising the child, but sharing in those costs is not Father's responsibility. Apportioning the premiums as Mother suggests unfairly burdens Father with the cost of insuring a child who is not his. We agree with Father that Mother's health insurance premium credit should reflect the actual cost she has incurred in insuring the children and not the theoretical cost of insuring them if her situation were different. Accordingly, we hold the trial court abused its discretion in the health insurance premium credit it gave Mother.

### III. Parenting Time and Other Visitation-Related Issues

#### A. Agreement

This case was heard over the course of two days – one in June 2011 and one in September 2011. At the June hearing, the parties informed the court they had an agreement as to certain issues:

14

> [Mother's counsel]: [Father], I believe, wants seven weeks [parenting time] in the summertime and he wants the option to take that continuously, and [Mother] stipulates that [Father] should have seven weeks in the summertime. We acknowledge that under the Parenting Time Guidelines he has the right to take those continuously if he wants to. We understand that that's not necessarily going to apply to this [2011] summer right here, where we've got a little bit of a glitch going on about the exact seven weeks, and that seven days for the combined winter/New Years holiday . . . . And then reasonable, liberal visitation here in Indianapolis whenever [Father is] here, with approximately seven days notice if that's possible.

Tr. at 31. In addition, for the summer of 2011, the parties agreed Father's parenting time would begin within the week after school let out and end before August 1. See id. at 35. They also agreed that Father would pay for parenting time transportation and that each party would pay the extracurricular expenses the children incurred while they were in each parent's custody. The trial court stated, "we've got an agreement as to the visitation and those other parts of it. We'll have you draw that up separately and have them sign it, just so they understand it." Id. at 47. The Chronological Case Summary entry for the June hearing indicates that a "partial agreement was read into the record." Appellant's App. at 4. No signed agreement or order was apparently entered.

When the parties returned to court to conclude the hearing in September, however, they noted that the children's school had adopted a balanced calendar to begin with the 2011-12 school year, and that pursuant to the new calendar, fall, winter, and spring breaks would be longer but summer break would be shorter. Where Father had traditionally exercised extended parenting time during the winter and summer breaks, Mother now requested that because of the schedule change, the court order parenting time in accordance with the Parenting Time Guidelines. The trial court's order did not incorporate the provisions of the

15

June stipulation, but separately addressed parenting time and travel expenses and failed to address extracurricular expenses. Father contends it was error for the trial court to disregard what he characterizes as binding stipulations conclusively resolving parenting time issues.

The best interests of the children are the primary consideration when custody, support, or visitation issues are being determined. Naggatz v. Beckwith, 809 N.E.2d 899, 902 (Ind. Ct. App. 2004), trans. denied. The wishes of the parents are to be given considerable weight, but it is for the trial court to determine whether any agreement is in the best interests of the child. Id. The agreed-upon seven weeks of summer visitation at Father's home in Virginia is incompatible with the continuous school calendar as shown by the exhibits introduced at the September 2011 hearing.[3] Because the circumstances surrounding the exercise of parenting time had changed by the time of the September hearing, it was not inappropriate for the trial court to revisit the issue.

## B. Parenting Time Guidelines

Father next contends that if, as we have found above, the trial court did not err in considering parenting time on its own, it nonetheless erred in its application of the Parenting Time Guidelines in ordering that Father have parenting time with the children during half of each school break.

The trial court cited Parenting Time Guideline II.B.3 as support for its order. Guideline II.B.3 provides that for children five years of age and older, extended parenting time shall be one-half the summer vacation, but if the child attends a year-round school, "the

---

[3] For instance, the summer break in 2012 was from June 29, 2012, to August 6, 2012, or approximately five weeks. See Petitioner's Exhibit 17.

16

periodic breaks should be divided equally between the parties." Father contends the trial court erred in applying this Guideline provision rather than those found in Guideline III which addresses parenting time when distance is a major factor. Guideline III provides:

> Where there is a significant geographical distance between the parents, scheduling parenting time is fact sensitive and requires consideration of many factors which include: employment schedules, the costs and time of travel, the financial situation of each parent, the frequency of parenting time and others.
> 1. General Rules Applicable. The general rules regarding parenting time as set forth in Section 1 of these guidelines shall apply.
> 2. Parenting Time Schedule. The parents shall make every effort to establish a reasonable parenting time schedule.

The commentary to this Guideline provides a parenting time schedule that "may be helpful": "For a child 5 years of age and older, seven (7) weeks of the school summer vacation period and seven (7) days of the school winter vacation plus the entire spring break, including both weekends if applicable."

It appears Father is simply restating his argument that the June agreement between the parties should be how parenting time is handled. There is some tension between the year-round school provision of Guideline II and the recommended extended parenting time schedule of Guideline III. There is also tension between the children's school schedule and the agreement the parties made in June. Both Guideline III's suggested parenting time schedule and the parties' agreement are unworkable given the length of breaks in the new school calendar. However, the parties' practice had been for Father to have a total of eight weeks of parenting time with the children. The trial court's order seeks to maintain that

17

amount of parenting time while working within the school schedule, thus considering the factors relevant to this particular situation as Guideline III requires.[4]

We do believe, however, that the trial court abused its discretion in altering Father's parenting time to four times per year as opposed to two but ordering Father to continue to pay all costs of transportation for parenting time. Guideline I(B)(1) concerns transportation responsibilities: "Unless otherwise agreed between the parents, the non-custodial parent shall provide transportation for the child at the start of the scheduled parenting time and the custodial parent shall provide transportation for the child at the end of the scheduled parenting time." Comment 2 to this Guideline notes that where distance is a factor, "[t]he cost of transportation should be shared based on consideration of various factors, including the distance involved, the financial resources of the parents, the reason why the distances exist, and the family situation of each parent at that time." The trial court, noting this Guideline and the commentary, and considering that the amended agreement required Father to pay all transportation expenses, that Father has moved from Indiana to facilitate his current wife's employment opportunities, that Father has a higher standard of living than Mother, and that Mother has concerns about being required to pay any transportation costs because of

---

[4] The heading to Father's argument about the Parenting Time Guidelines contends the trial court's order "impermissibly restrict[s] [his] parenting time contrary to I.C. § 31-17-4-2." Appellant's Brief at 23. That section provides that the court may modify a parenting time order whenever modification is in the best interests of the child, but the court "shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." Father makes no actual argument with respect to this statute, however. To the extent he is arguing that he gets less parenting time under the trial court's order than he did previously, he has not shown that he will get any less parenting time, let alone enough less parenting time that it could qualify as "restricted."

18

Father's frequent moves, found that Father should pay all costs of transportation for the children.

We acknowledge the agreement between the parties regarding transportation costs, but note that said agreement was made presuming a different set of circumstances. We also acknowledge that Father moved from Indiana for personal reasons and that he has lived as far away from Indiana as Germany. Because the Parenting Time Guidelines demonstrate a preference for the parties sharing in the cost of transportation where the distance between them is significant, see Saalfrank v. Saalfrank, 899 N.E.2d 671, 682 (Ind. Ct. App. 2008), we believe the trial court's order placing the entire burden of transportation costs on Father, coupled with the parenting time order doubling the number of times Father may exercise parenting time, is an abuse of discretion. Given the trial court's findings about the reason for the distance and the financial resources of the parties, it may be that sharing the costs equally is not appropriate, but it should be shared in some manner. We therefore reverse that part of the order dealing with transportation costs and remand to the trial court to reconsider the allocation of transportation costs.[5]

## C. Extracurricular Expenses

Father also notes that the trial court's order does not address extracurricular expenses, an issue raised by Mother in her motion. No prior order specifically addresses extracurricular expenses, either; rather, the parties have traditionally paid the extracurricular expenses the

[5] We note that transportation costs can also be addressed in the child support order itself, as the commentary to Indiana Child Support Guideline 1 notes that, among the "infinite number of situations" that may call for a deviation from the guideline support amount, "[t]he custodial or noncustodial parent incurs significant travel expense in exercising parenting time."

19

children have incurred while in each parent's care, and that is also the agreement they reached during the June 2011 hearing. As none of the events occurring between the June and September hearings have any demonstrable impact on these expenses, as they have on parenting time and transportation expenses, we see no cause to alter the parties' agreement as to this issue. We do, however, believe it would be best to memorialize it in writing, and we therefore direct the trial court to amend its order to incorporate the parties' historical practice and future agreement regarding the payment of extracurricular expenses.

## IV. College Expenses

Father next contends the trial court erred in not modifying the parties' original agreement regarding college expenses. At the time of the parties' divorce, they agreed that if the children continued their education at the college level, they would share equally the cost "after each child's scholarships, grants, loans or other financial aid amounts." Appellant's App. at 36. In addition, the parties agreed the cost would be calculated "based upon the actual cost incurred, or the cost that would be incurred if the child attended a state supported college in Indiana as a resident student, whichever is less." Id. Father requested this provision be modified because his status as a disabled veteran entitled the children to an abatement of educational expenses that is not addressed in prior orders. Specifically, Father asked the trial court to order the children to apply to an Indiana school that accepted the veterans benefit so that the actual value of the benefit could be assessed and applied, if necessary, to the college expenses each child actually incurred. Father also requested the trial court modify the 50/50 provision of the agreement to reflect the parties' current proportional

20

income; that is, to reduce his contribution from fifty percent. The trial court declined to modify the college expenses provision, finding that Mother acknowledged that even if the children go to out-of-state schools, Father's contribution to tuition expenses was "likely to be entirely eliminated due to Indiana's statutory tuition waiver program . . . ." Id. at 19. The trial court also declined to reduce Father's percentage contribution to college expenses because Father's household income and financial position is greater than Mother's.

Provisions for the payment of educational expenses are modifiable because educational expenses are in the nature of child support. Schacht v. Schacht, 892 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). Support orders, including orders to pay post-secondary expenses, may be modified even if the order is the result of an agreement between the parties. Walters v. Walters, 901 N.E.2d 508, 511 (Ind. Ct. App. 2009). To obtain a modification of a support provision, the petitioner is required to show "changed circumstances so substantial and continuing as to make the terms unreasonable" or a deviation of twenty percent or more from the guideline obligation. Ind. Code § 31-16-8-1. The trial court found there were no changed circumstances because Father's retirement between the time of the agreement and the time the children would begin college had been contemplated when the agreement was made. However, the changed circumstances Father alleges are the tuition benefit available to the children at an Indiana college due to his status as a disabled veteran which was unknown to the parties in 1999.

The agreement contemplates both capping the parents' obligation to contribute to college expenses at the cost of an in-state institution and reducing the obligation by the

21

amount of any financial aid, both of which would include consideration of the tuition benefit available to the children. Moreover, this situation is unlike that in <u>Schacht</u>, in which the parties' agreement to each contribute one-third of their child's college expenses was modified upon a finding that because the mother had incurred a significant loss of family income and assumption of additional expenses due to the illness of her current husband, her financial ability to pay a one-third share of college expenses had substantially changed. 892 N.E.2d at 1274; <u>cf.</u> <u>Hay v. Hay</u>, 730 N.E.2d 787, 793 (Ind. Ct. App. 2000) (father failed to show change in circumstances warranting modification of agreement regarding payment of college expenses based solely on child's enrollment in college because that situation was contemplated by the parties at the time of the agreement and the parties' relative income had not changed substantially). Here, the manner in which Father may contribute toward college expenses may have changed since the agreement, but his ability to do so has not. We cannot say the trial court abused its discretion in finding no substantial change in circumstances and declining to modify the college expenses provision of the parties' agreement. [6]

## V. Social Security Benefits

Finally, Father contends the trial court erred in its treatment of the dependent Social Security retirement benefits the children receive in the amount of $324.00 per week. The

---

[6] Father contends the trial court erred in failing to reduce his contribution to college expenses from the fifty percent to which he agreed to the percentage of his proportional income. Consideration of this issue would first require a finding of changed circumstances to warrant a modification, and having held the trial court did not abuse its discretion in finding no changed circumstances, we need not address this issue.

Father also contends the trial court erred in considering his wife's income in determining his relative financial position for purposes of his continued ability to contribute to college expenses. Although in general, the income of the parties and not the income of the spouses of the parties is considered in determining Weekly Gross Income for purposes of calculating child support, <u>see</u> Ind. Child Support Guideline 3, in determining post-secondary educational expenses, a trial court must consider, in part, "the incomes and <u>overall financial condition</u> of the parents." Ind. Child Support Guideline 6, Commentary (emphasis added). Father's wife's income, as it impacts his overall financial position, is

22

trial court added the weekly benefit to Mother's weekly adjusted income; Father contends the trial court should have instead credited that amount against his child support obligation.

In Stultz v. Stultz, 659 N.E.2d 125 (Ind. 1995), our supreme court considered whether the trial court properly refused to offset a father's child support obligation by the amount of Social Security retirement benefits paid directly to his children. The trial court had determined, relying on the factors delineated in Indiana Code section 31-1-11.5-12(a) (now Indiana Code section 31-16-6-1), that the father should not be given credit against his child support for the Social Security retirement benefits received by his children. In particular, the trial court looked to the standard of living the child would have had if the marriage had not been dissolved, and determined that if the marriage had remained intact, the children would have enjoyed the benefit of the mother's income, the father's income plus retirement benefits and the Social Security retirement benefits they received. Id. at 127. Our court reversed the trial court, holding that the obligor parent is entitled to a credit for Social Security benefits received by the child due to that parent's retirement. Stultz v. Stultz, 644 N.E.2d 589, 592 (Ind. Ct. App. 1994). On transfer, our supreme court held that "such a credit is not automatic and that the presence of Social Security benefits is merely one factor for the trial court to consider in determining the child support obligation or modification of the obligation." Stultz, 659 N.E.2d at 128. The trial court had "carefully consider[ed] all of the factors in this particular case [and] found that a credit was not warranted[,]" and the supreme court affirmed, unable to say that decision was clearly erroneous. Id. The court went on to note

relevant to this inquiry. See Schacht, 892 N.E.2d at 1276 n.1.

23

that in the appropriate case, trial courts could grant a credit for Social Security retirement benefits, but "anticipate[d] . . . that such a credit will generally be denied . . . ." Id.

The Indiana Child Support Guidelines now include the Stultz language in addressing Social Security benefits as an adjustment to a parent's child support obligation (line 7 of the child support worksheet):

> 2. Noncustodial parent: Social Security benefits received by a custodial parent, as representative payee of the child, based upon the earnings . . . of the noncustodial parent shall be considered as a credit to satisfy the noncustodial parent's child support obligation as follows:
>     i. Social Security Retirement benefits may, at the court's discretion, be credited to the noncustodial parent's current child support obligation. The credit is not automatic. The presence of Social Security Retirement benefits is merely one factor for the court to consider in determining the child support obligation or modification of the obligation.

Child Supp.G. 3(G)(5)(a). The commentary to this guideline notes that

> [t]he court has discretion to allow an adjustment to a parent's child support obligation based on the amount of Social Security Retirement benefits paid for the benefit of the child due to that parent's retirement. The retirement benefit is merely one of the factors that the court should consider when making an adjustment to the child support obligation.

In Thompson v. Thompson, 868 N.E.2d 862 (Ind. Ct. App. 2007), this court noted that not giving a credit for Social Security retirement benefits can result in gross child support and a percentage of total family income used for the benefit of the child that is in excess of what the child would have received had the family remained intact; conversely, giving the non-custodial parent a dollar-for-dollar credit for the retirement benefits can result in less. Id. at 867-68. Either would be an abuse of the trial court's discretion. Rather, the trial court should strive to give or deny credit for Social Security retirement benefits such that a

24

substantially similar percentage of total family income is devoted to children in families receiving the benefits as in those that do not. Id. at 869.

Here, the trial court found that Father should be given some credit in the child support calculation due to the Social Security retirement benefits the children receive, but that he should not receive a dollar-for-dollar credit because such credit would reduce the children's standard of living significantly compared to that which they would have had if the marriage had not been dissolved. The treatment of Social Security retirement benefits is within the discretion of the trial court and we cannot say the trial court's decision here to give Father a credit is an abuse of that discretion. However, we disagree with the method the trial court used for computing the child support obligation. The trial court purported to account for the retirement benefits by adding the weekly amount of the benefits to Mother's income on line 1(E) in determining her weekly adjusted income for purposes of calculating the basic child support obligation. Although this does increase Mother's income and correspondingly, reduce Father's percentage share of the total income, it also has the effect of applying the reduced percentage to a greater amount of total income in the first instance.

Accordingly, the trial court's calculation does not really give Father a "credit" for the retirement benefits the children receive. We therefore remand to the trial court to refigure the child support obligation to give Father an appropriate credit after the basic child support obligation is calculated, but we point the trial court to several considerations in doing so. First, as the trial court noted, the guiding principle in adjusting the child support obligation should be to afford the children a similar standard of living to that they would have had but

25

for the parties' divorce, and the retirement benefits are but a factor in that determination.

Second, as the trial court found, a dollar-for-dollar credit to Father's child support obligation is not appropriate, as in this case, it would reduce Father's child support obligation to zero. Father still has an obligation to support his children. See Stultz, 659 N.E.2d at 130. The retirement benefits are provided by the government to the children at no cost to Father – the amount of Social Security contributions he has made would be the same regardless of whether he had no children or ten children. Moreover, the retirement benefits paid to Father are not reduced or impacted in any way by the benefits the children receive. And the retirement benefits to the children do not act as a replacement for Father's income as disability benefits would.[7] Father cannot completely avoid his child support obligation because of an entitlement to which he has not contributed. As the trial court has found in its discretion that Father is entitled to a credit for the retirement benefits paid to his children, the trial court should figure the credit that will provide the children the appropriate standard of living and apply it to the Father's child support obligation consistent with this opinion.

### Conclusion

The trial court did not abuse its discretion in its order regarding Father's prior uninsured health care expense obligation, parenting time, and college expenses. The trial court did abuse its discretion in calculating Mother's health insurance premium credit, its

---

[7] In Brown v. Brown, 849 N.E.2d 610 (Ind. 2006), our supreme court noted the difference between Social Security retirement benefits and disability benefits in explaining the different treatment of the two benefits: a parent is entitled to have Social Security disability benefits paid to a child credited against the parent's child support obligation because disability payments are intended to provide support the disabled parent is unable to provide. Id. at 614 (quoting Williams v. Williams, 727 N.E.2d 895, 897 (Ohio 2000)). "Disability impacts a parent's earning capacity and, therefore, a child's standard of living, in a fundamentally different way than does retirement." Id.

order regarding parenting time transportation expenses, and in failing to address extracurricular expenses. Moreover, the trial court did not appropriately figure the credit to which Father is entitled toward his child support obligation because of Social Security retirement benefits the children receive. Accordingly, the trial court's order is affirmed in part and reversed in part and remanded for the trial court to recalculate child support and amend its order accordingly.

Affirmed in part; reversed and remanded in part.

BAKER, J., and BRADFORD, J., concur.