**FILED**
Mar 10 2015, 8:56 am
CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEYS FOR APPELLANT

Donald W. Francis, Jr.
Michelle B. Domer
Francis Berry Domer
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of M.N., A Minor Child, and M.C., Her Father<br><br>L.N. and Heartland Adoption Agency,<br><br>*Appellants-Petitioners*<br><br>v.<br><br>M.C.,<br><br>*Appellee-Respondent* | March 10, 2015<br><br>Court of Appeals Case No. 53A01-1410-JT-462<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable Stephen R. Galvin, Judge<br><br>Cause No. 53C07-1404-JT-214 |

**Mathias, Judge.**

L.N. ("Mother") and the Heartland Adoption Agency (collectively "the Appellants") appeal the Monroe Circuit Court's order dismissing the Heartland Adoption Agency's petition to terminate M.C.'s parental rights.

We reverse and remand for proceedings consistent with this opinion.

## Facts and Procedural History

M.N. was born on October 1, 2009. M.C. is M.N.'s biological father and established his paternity to M.N. M.C. has paid child support intermittently since M.N.'s birth and has had minimal, sporadic contact with the child.

Four-year-old M.N. is autistic and non-verbal. She communicates with her mother through sign language and her body language. M.N. exhibits anxiety and struggles with social interactions and sensory issues. L.N. ("Mother") has established a rigid and predictable schedule for M.N., which lessens M.N.'s anxiety and helps her cope with daily life.

M.N. receives Supplemental Security Income ("SSI") because she is a disabled child. Her SSI payment is reduced if Mother's income increases. M.C.'s intermittent child support payments also reduce M.N.'s SSI payment in an amount greater than the child support amount. M.C.'s infrequent child support payments also result in burdensome paperwork that Mother must complete and submit to government agencies in a short period of time so that M.N. continues to receive her SSI payment.

At Mother's request, on April 16, 2014, the Heartland Adoption Agency, a licensed child placement agency, filed a petition to terminate M.C.'s parent-child relationship with M.N.[1] The petition alleged M.C.

> has abandoned or deserted said child for at least six (6) months prior to the filing of this Petition, and he has for a period of at least one year, failed, without justifiable cause, to significantly communicate with the minor child or to provide support for the minor child's health, welfare or care. Further, Father is unfit.

Appellant's App. p. 4.

On May 22, 2014, M.C. filed a voluntary relinquishment of his parent-child relationship to M.N. M.C. alleged that it was in M.N.'s best interests to terminate their parent-child relationship. On that same date, the trial court appointed a guardian ad litem ("GAL") for M.N. The GAL concluded that terminating M.C.'s rights to M.N. was in her best interests because M.C. "is not committed to being involved and getting to know his daughter's special needs." *Id.* at 13.

The trial court held a hearing on the petition on July 24, 2014. The GAL, Mother, and M.C. testified that terminating M.C.'s rights was in M.N.'s best

---

[1] The petition names Mother as the petitioner, "by Heartland Adoption Agency." In its order dismissing the petition, the trial court observed that Mother did not have statutory authority to file the petition. The trial court therefore "presume[d] that Heartland Adoption Agency is the petitioner in this cause." Appellant's App. p. 16.

interests, that M.C. is not involved in M.N.'s care, he does not exercise parenting time, and he does not consistently pay his child support.[2]

[9] The trial court questioned counsel concerning whether the petition to terminate M.C.'s parent-child relationship with M.N. was permitted under Indiana Code section 31-35-1-4. The trial court also expressed concern that public policy might prevent the court from granting the petition. Therefore, the trial court took the matter under advisement.

[10] On October 2, 2014, the trial court issued findings of fact and conclusions thereon dismissing the petition to terminate M.C.'s parental rights. The trial court concluded that to file a petition to terminate a parent's rights, the licensed child placing agency must be acting within the scope of its statutorily defined duties. "Nothing in the enabling statutes would allow a LCPA to file a petition to terminate the rights of one parent while maintaining the rights of the other parent when there is no issue of child placement, supervision, or adoption." *Id.* at 17.

> Heartland Adoption Agency is not providing child welfare services to [M.N.] or family. It is not seeking to further an adoption or child placement by filing the petition to terminate [M.C.'s] parental rights. Rather, Heartland Adoption Agency is selling a service. It has filed a petition to terminate parental rights for a fee, no more and no less.

---

[2] M.C. had paid $165 total in 2014 on the date of the July 24, 2014 hearing. His court-ordered child support obligation is $155 per week. Tr. pp. 21-22.

Clearly, Heartland Adoption Agency is acting outside the scope of its statutory authorization as an LCPA.

*Id.*

[11] The trial court also noted that the attorneys who own Heartland Adoption Agency are also Mother's attorneys and concluded that the "interrelationship creates a serious potential of a conflict of interest in this case." *Id.* Specifically, the trial court observed that "there is a significant risk that the duty that Mr. Francis and Ms. Domer owe to their client, [Mother], may conflict with their financial interest in Heartland Adoption Agency and with their duty to act in the best interests of [M.N.] as the others of Heartland Adoption Agency." *Id.* at 18.

[12] Mother and Heartland Adoption Agency appeal the trial court's dismissal of Heartland Adoption Agency's petition to terminate M.C.'s parental rights to M.N. M.C. did not file an Appellee's brief.

## I. Indiana Code section 31-35-1-4

[13] A parent's constitutional right to raise his or her child may be terminated when the individual is unable or unwilling to fulfill his or her responsibility as a parent. *In re B.D.J.*, 728 N.E.2d 195, 199-200 (Ind. Ct. App. 2000). "Because the ultimate purpose of the law is to protect the child, the parent-child relationship will give way when it is no longer in the child's interest to maintain this relationship." *Id.* at 200.

Indiana Code section 31-35-1-4 governs a petition to voluntarily terminate a parent-child relationship at the parent's request and provides:

> (a) If requested by the parents:
>
>> (1) the local office; or
>>
>> (2) a licensed child placing agency;
>
> may sign and file a verified petition with the juvenile or probate court for the voluntary termination of the parent-child relationship.
>
> (b) The petition must:
>
>> (1) be entitled "In the Matter of the Termination of the Parent-Child Relationship of _____, a child, and _____, the child's parent (or parents)"; and
>>
>> (2) allege that:
>>
>>> (A) the parents are the child's natural or adoptive parents;
>>>
>>> (B) the parents, including the alleged or adjudicated father if the child was born out of wedlock:
>>>
>>>> (i) knowingly and voluntarily consent to the termination of the parent-child relationship; or
>>>>
>>>> (ii) are not required to consent to the termination of the parent-child relationship under section 6(c) of this chapter;
>>>
>>> (C) termination is in the child's best interest; and
>>>
>>> (D) the petitioner has developed a satisfactory plan of care and treatment for the child.

Heartland Adoption Agency is a "child placing agency", which

> for purposes of IC 31-27, means a person that provides child welfare services to children and families, including: (1) home studies, investigation, and recommendation of families for the purpose of placing, arranging, or causing the placement of children for adoption, foster care, or residential care; and (2) supervision of those placements.

Ind. Code § 31-9-2-17.5. Indiana Code article 31-27, and specifically chapter 31-27-6, imposes licensing requirements and regulations on child placing agencies.

[16] The trial court dismissed the Appellants' petition after concluding that under Indiana Code section 31-35-1-4, the Heartland Adoption Agency is not authorized to file a petition to terminate parental rights "when there is no issue of child placement, supervision, or adoption." Appellant's App. p. 17. The Appellants argue that the trial court ignored the plain language of the statute in reaching its conclusion.

[17] The interpretation of a statute is a pure question of law and is reviewed under a de novo standard. *See In re Marriage of Davis and Summers*, 1 N.E.3d 184, 187 (Ind. Ct. App. 2013). "'When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutes leave no room for judicial construction.'" *In re Paternity of H.H.*, 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008) (quoting *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007)).

[18] Indiana Code section 31-35-1-4 does not restrict a licensed child placing agency's reasons for filing a petition to voluntarily terminate parental rights. The statute plainly and unambiguously states that a licensed child placing agency "may sign and file a verified petition with the juvenile or probate court for the voluntary termination of the parent-child relationship" at the parents' request. I.C. § 31-35-1-4.

[19] Here, as required by the plain language of Indiana Code section 31-35-1-4, Mother retained Heartland Adoption Agency, a licensed child placing agency, to file a petition to voluntarily terminate M.C.'s parental rights to M.N. Although the petition alleged that M.C.'s consent to the termination of the parent-child relationship was not required because he had abandoned M.N., M.C. later agreed to voluntarily relinquish his parent-child relationship with M.N.[3]

[20] This case presents a very unique set of circumstances. M.C. is not present in M.N.'s life but does occasionally pay his court-ordered child support. M.C.'s occasional financial support negatively affects the amount of M.N.'s SSI payment, and Mother must complete additional "burdensome" paperwork to resume and maintain M.N.'s SSI payment. Mother, as M.N.'s only caregiver, would rather forego any child support from M.C. in order to facilitate and protect M.N.'s SSI payment.

[21] Heartland Adoption Agency, as a licensed child placing agency, is providing "child welfare services" to M.N. and Mother by assisting them with maintaining M.N.'s SSI disability payments.[4] *See* Ind. Code §§ 31-9-2-17.5,

---

[3] Importantly, and as required by Indiana Code section 31-35-1-6, M.C. appeared in open court and consented to the voluntary termination of his parental rights. *See also Youngblood v. Jefferson County Div. of Family and Children*, 838 N.E.2d 1164, 1169 (Ind. Ct. App. 2005) (stating that "when a parent executes a written consent to the voluntary termination of her [or his] parental rights and appears in open court to acknowledge her [or his] consent to the termination, the consent will be deemed valid").

[4] Pertinent to the facts presented in this appeal, one of the several purposes of a child welfare program is "[p]roviding services targeted to the assistance of children who are developmentally or physically disabled and their families, for the purposes of prevention of potential abuse, neglect, or abandonment of those

19.5 (stating that a child placing agency is "a person that provides child welfare services to children and families" and "child welfare services" are services "provided under a child welfare program"). Without M.N.'s disability SSI payment, we may reasonably infer that Mother would struggle to provide for M.N.'s special needs.

[22] For all of these reasons, we conclude that Heartland Adoption Agency's petition to terminate M.C.'s parental rights to M.N. at Mother's request met the statutory requirements of Indiana Code section 31-35-1-4, and the trial court erred when it concluded that Heartland Adoption Agency acted outside the scope of its statutory authorization as a licensed child placing agency when it filed the petition to terminate M.C.'s parental rights.

## II. Conflict of Interest

[23] Next, the Appellants challenge the trial court's conclusion that "there is a significant risk that the duty" Mother's attorneys owed to her "may conflict with their financial interests in Heartland Adoption Agency and with their duty to act in the best interests of M.N. as the owners of Heartland Adoption Agency." *See* Appellant's App. p. 18. Heartland Adoption Agency's owners have appeared as counsel of record for both Mother and the adoption agency.

children, and enabling the children to receive adequate family support and preparation to become self-supporting to the extent feasible[.]" Ind. Code § 31-26-3.5-2.

[24] Rule 1.7 of the Indiana Rules of Professional Conduct provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A concurrent conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client[.]"

[25] Mother hired her attorneys and the adoption agency they own to facilitate termination of M.C.'s parental rights to M.N. because M.C.'s sporadic child support payments negatively affect M.N.'s SSI disability payments. In addition, M.C. does not exercise visitation with four-year-old M.N. and does not want to be involved in M.N.'s care and upbringing. Therefore, Mother desires to terminate M.C.'s parental rights to maintain the status quo because M.N.'s special needs are best met in a predictable, stable environment. We specifically note that Mother, Heartland Adoption Agency, the court-appointed GAL, and M.C. all agree that termination of M.C.'s parental rights is in M.N.'s best interests.

[26] The trial court's generalized concern that a conflict of interest could arise between Mother and Heartland Adoption Agency is well-taken, and perhaps the better course for Mother would have been to proceed through another licensed agency, rather than one owned by her attorneys. However, Mother's resources are clearly limited, and under the specific facts of this case, all involved parties are pursuing the same goal. Heartland Adoption Agency's petition to terminate M.C.'s parental rights is the simplest and most expedient approach. For all of these reasons, we conclude that the trial court erred when it

dismissed Heartland Adoption Agency's petition to terminate M.C.'s parental rights to M.N. because "of the significant risk of a conflict of interest." *See* Appellant's App. p. 18.

## Conclusion

The trial court erred when it dismissed Heartland Adoption Agency's petition to terminate M.C.'s parent-child relationship to M.N. Accordingly, we remand this case to the trial court with instructions to adjudicate the petition on its merits.

Reversed and remanded for proceedings consistent with this opinion.

Friedlander, J., and Bradford, J., concur.