## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 07 2015, 8:32 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANTS

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

In the Matter of the Termination of the Parent-Child Relationship of:

A.D. and C.D. (Minor Children)

and

Ch.D. (Mother) and Cl.D. (Father),

*Appellants-Respondents,*

v.

December 7, 2015

Court of Appeals Case No.
84A05-1504-JT-157

Appeal from the Vigo Circuit Court

The Honorable David R. Bolk, Judge

The Honorable Daniel W. Kelly, Magistrate

Trial Court Cause Nos.
84D09-1407-JT-713 and -714

Indiana Department of Child
Services,

*Appellee-Petitioner*

**Crone, Judge.**

# Case Summary

Ch.D. ("Mother") and Cl.D. ("Father") (collectively "the Parents") appeal the trial court's involuntary termination of their parental rights to their minor children, A.D. and C.D. (collectively "the Children"). In the midst of the termination evidentiary proceedings, the Parents informed the trial court that they wished to stop the proceedings and concede to the termination of their respective parental rights. Although the Parents indicated that they would prefer a voluntary termination of their rights, when the trial court indicated that the termination would remain involuntary as alleged in the petition to terminate, the Parents assured the court that they still wanted their parental rights terminated. The Parents' sole contention on appeal is that the trial court abused its discretion when it granted the involuntary, rather than voluntary, termination of their parental rights. Finding no abuse of discretion or reversible error, we affirm.

# Facts and Procedural History

On March 24, 2013, the trial court authorized the emergency removal of seven-year-old A.D. and five-year-old C.D. from the Parents' care after Father made allegations that Mother was sexually abusing A.D. Following an investigation, neglect and sexual abuse allegations against both Mother and Father regarding the Children were substantiated. On May 26, 2013, the Vigo County Department of Child Services ("DCS") filed its petition alleging that the Children were Children in Need of Services ("CHINS"). The trial court subsequently held a factfinding hearing and adjudicated the children as CHINS upon stipulation by the Parents. Thereafter, the court held a dispositional hearing and entered its decree requiring the Parents to participate in services.

After Parents made no progress in remedying the conditions that resulted in the Children's removal from the home, DCS filed its petition to involuntarily terminate the Parents' parental rights. A termination hearing was scheduled and began on December 15, 2014. DCS presented ten witnesses and fourteen exhibits. At the conclusion of the day, the trial court continued the remainder of the hearing to January 29, 2015. The DCS still had the testimony of one witness to present, and the Parents had not yet presented their case.

On January 27, 2015, two days prior to the continued termination hearing, the trial court held a CHINS permanency hearing. At the outset of the hearing, the Parents' counsel informed the trial court that "they would just like their [parental] rights terminated today" instead of coming back to court to finish the

termination hearing. Jan. Tr. at 4. [1] Counsel stated, "I think that they would prefer it to be voluntary but it[']s my understanding that because how far into the Fact Finding Trial we were … I explained to them that I thought it was going to be too late but that I would ask." *Id*. Because DCS filed the original petition for involuntary termination, the trial court asked DCS its position on the issue. DCS indicated, "We are not inclined to grant the Voluntary." *Id*. at 5. In light of this position, the trial court addressed the Parents and asked them if they still wanted to "go ahead and have it terminated." *Id*. Mother responded, "We want it done today, please." *Id*. Likewise, Father stated, "So we want it over with." *Id*. The trial court granted the Parents' request to cancel further proceedings and concluded the hearing. On March 13, 2015, the trial court entered detailed findings of fact, conclusions thereon, and an order terminating the Parents' parental rights.[2] This appeal ensued.

# Discussion and Decision

[5] "The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). However, parental rights are "not absolute and must be subordinated to the child's interests when determining the

---

[1] Although the Parents had separate public defenders who were present at the permanency hearing, Father's counsel spoke on behalf of both Parents.

[2] We do not specifically mention the trial court's detailed findings and conclusions here because the Parents do not challenge those findings and conclusions, or the underlying evidentiary support, on appeal. However, we must acknowledge that the trial court's findings indicate that these children were subjected to sexual abuse and neglect of the most horrendous nature at the hands of the Parents.

proper disposition of a petition to terminate parental rights." *Id.* (citation omitted). Accordingly, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities. *Id.* "Because the ultimate purpose of the law is to protect the child, the parent-child relationship will give way when it is no longer in the child's interest to maintain this relationship." *In re M.N.*, 27 N.E.3d 1116, 1119 (Ind. Ct. App. 2015) (citation omitted), *trans. denied.*

[6] The Parents concede that their parental rights should have been terminated; they simply challenge whether the termination should have been considered involuntary or voluntary. We begin by noting that the voluntary termination of parental rights and the involuntary termination of parental rights are different dispositions governed by separate statutory provisions. *See* Ind. Code § 31-35-1-4 (voluntary termination); Ind. Code § 31-35-2-4 (involuntary termination). Here, DCS petitioned for the involuntary termination of the Parents' parental rights pursuant to Indiana Code Section 31-35-2-4 and the termination evidentiary hearing began and proceeded on that basis. Nevertheless, the Parents baldly assert that they had "a concomitant right to seek voluntary termination of their parental rights" in the midst of the termination proceeding. Appellants' Br. at 6.

[7] We note that the Parents cite no authority, and we are unaware of any, to support their assertion of this concomitant right. Moreover, the Parents fail to provide cogent argument or reasoning to support their contention that the trial court was obligated to convert the involuntary termination proceeding that was

already underway into a voluntary termination proceeding merely because they preferred it to be so. Accordingly, the Parents have waived our review of their argument. *See A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 n.4 (Ind. Ct. App. 2013) (failure to support arguments with cogent reasoning results in waiver on appeal), *trans. denied*; *see also* Ind. Appellate Rule 46(A)(8)(a) (requiring each contention be supported by cogent reasoning and citations).

[8]     Waiver notwithstanding, we find no abuse of discretion or reversible error. Our review of the record reveals that more than a month after DCS presented ample substantive evidence in support of its petition to involuntarily terminate the Parents' parental rights, the Parents decided that, rather than presenting their respective cases in opposition, they would instead effectively admit to the allegations in the petition in order to get the termination "over with" and to get "on with [their] business." Jan. Tr. at 5. At no time did the Parents file or request leave to file a petition for voluntary termination, nor did they condition their concession to the termination of parental rights on DCS amending its original petition. Indeed, despite their voiced preference that the termination be considered voluntary, the Parents assured the trial court that they wished to terminate even after DCS indicated that it would not amend the involuntary petition. It was only after receiving the Parents' assurances that the trial court proceeded to involuntarily terminate their rights. Therefore, the Parents have invited the alleged error of which they now complain. Error invited by the complaining party is not reversible error. *C.T. v. Marion Cnty. Dept. of Child*

*Servs.,* 896 N.E.2d 571, 588 (Ind. Ct. App. 2008), *trans. denied* (2009). The trial court's involuntary termination of parental rights is affirmed.

[9] Affirmed.

Vaidik, C.J., and Bailey, J., concur.